# EXHIBIT A

Law Offices
**HINSHAW & CULBERTSON LLP**
2375 E. Camelback Rd.
Suite 410
Phoenix, AZ 85016
602-631-4400
602-631-4404
bdunn@hinshawlaw.com
msmith@hinshawlaw.com

Bradley L. Dunn (028897)
M. Victoria Smith (036334)
Attorneys for Defendant United Airlines, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Anant Bhattacharya, Jennifer Bummer, Kevin Chapa, Azia Charles, Shawn Day, Blake Falls, Adela Gallegos, Norbertha Garcia, Rick Gonzalez, Chris Hall, Cameron James, Lok Sum Ida Lau, Joshua Lim, Daniel Madison, Sawyer Mills, Young Noh, Emily Pagano, Jacklyn Pope, Felicia Ragsdale, Jackie Taylor, Paige Texas, Jenesis Tucker, Jon Watkins, Jonathan Wizard, individually and on behalf of themselves and others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> Westwind School of Aeronautics Phoenix, LLC, d.b.a. United Aviate Academy, a Delaware limited liability corporation, and United Airlines, Inc., Delaware corporation, <br><br> Defendants. | No. <br><br> **VERIFICATION OF BRADLEY L. DUNN** |

Pursuant the LRCiv 3.6(a) of the Local Rules of Civil Procedure,

I, Bradley L. Dunn, declare under penalty of perjury that the following is true and correct.

1       1.      I am a partner in the law firm of Hinshaw & Culbertson LLP, and have been admitted to practice law in the State of Arizona since 2011. I am one of the attorneys for Defendant United Airlines, Inc. ("United") in connection with the litigation captioned *Anant Bhattacharya, et al. v. Westwind School of Aeronautics Phoenix, LLC d.b.a. United Aviate Academy, et al.*, which is currently pending in the Superior Court of Arizona in Maricopa County, Case No. CV2025-006742 (the "Litigation"). I am competent to testify to the matters contained in this Verification.

The pleadings and other documents previously filed in the Litigation and attached as **Exhibit 1** through **Exhibit 8**[1] to the Notice of Removal are true and complete copies of all pleadings and other documents filed in the Litigation as of March 18, 2025.

DATED this 19th day of March, 2025.

HINSHAW & CULBERTSON LLP

/s/ Bradley L. Dunn
Bradley L. Dunn
M. Victoria Smith
*Attorneys for Defendant United Airlines, Inc.*

---

[1] Exhibits 1 through 7 were obtained from the court's case file on March 18, 2025, through eAccess and Exhibit 8 is the Notice of Filing Notice of Removal to Federal Court.

2

# EXHIBIT 1

David K. TeSelle (#032057)
Patrick M. Sweet (pro hac vice application forthcoming)
Sophia E. Kyziridis (pro hac vice application forthcoming)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
2390 East Camelback Road, Suite 403
Phoenix, Arizona 84016
Telephone: (602) 777-7000
Facsimile: (602) 777-7008
dteselle@burgsimpson.com
psweet@burgsimpson.com
skyziridis@burgsimpson.com
*Attorneys for Plaintiffs*

**ARIZONA SUPERIOR COURT**

**MARICOPA COUNTY**

| | |
|---|---|
| Anant Bhattacharya, Jennifer Bummer, Kevin Chapa, Azia Charles, Shawn Day, Blake Falls, Adela Gallegos, Norbertha Garcia, Rick Gonzalez, Chris Hall, Cameron James, Lok Sum Ida Lau, Joshua Lim, Daniel Madison, Sawyer Mills, Young Noh, Emily Pagano, Jacklyn Pope, Felicia Ragsdale, Jackie Taylor, Paige Texas, Jenesis Tucker, Jon Watkins, Jonathan Wizard, individually and on behalf of themselves and others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>Westwind School of Aeronautics Phoenix, LLC d.b.a. United Aviate Academy, a Delaware limited liability company, and United Airlines, Inc., a Delaware corporation,<br><br>      Defendants. | Case No. **CV2025-006742**<br><br>**CIVIL CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Assigned Judge: |

      Plaintiffs Anant Bhattacharya, Jennifer Bummer, Kevin Chapa, Azia Charles, Shawn Day,

Blake Falls, Adela Gallegos, Norbertha Garcia, Rick Gonzalez, Chris Hall, Cameron James, Lok

Sum Ida Lau, Joshua Lim, Daniel Madison, Sawyer Mills, Young Noh, Emily Pagano, Jacklyn

1

Pope, Felicia Ragsdale, Jackie Taylor, Paige Texas, Jenesis Tucker, Jon Watkins, and Jonathan Wizard, by and through undersigned counsel, Burg Simpson Eldredge Hersh & Jardine, P.C., on behalf of themselves and on behalf of those similarly situated, for their Civil Class Complaint and Demand for Jury Trial against the Defendants, Westwind School of Aeronautics Phoenix, LLC d.b.a. United Aviate Academy and United Airlines, Inc., hereby allege and state as follows:

## STATEMENT OF THE CASE

1.     This action seeks to hold Defendants Westwind School of Aeronautics Phoenix, LLC d.b.a. United Aviate Academy ("UAA") and United Airlines, Inc. ("United") accountable for their consumer fraud and deceptive trade practices. With promises of an expedited, one-year flight school program and a pipeline for employment as a commercial airline pilot, Defendants deceived hundreds of students into enrolling at great expense into UAA. The reality of UAA's program, though, is that it was woefully under resourced and incapable of meeting the grand promises Defendants made to lure these unsuspecting students.

2.     Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former UAA students whom Defendants victimized through their misrepresentations.

## PARTIES

3.     Anant Bhattacharya is an individual who resides in Florida.

4.     Jennifer Bummer is an individual who resides in California.

5.     Kevin Chapa is an individual who resides in Texas.

6.     Azia Charles is an individual who resides in Georgia.

7.     Shawn Day is an individual who resides in Arizona.

8.     Blake Falls is an individual who resides in Arizona.

9.     Adela Gallegos is an individual who resides in New Mexico.

10.    Norbertha Garcia is an individual who resides in Arizona.

11. Rick Gonzalez is an individual who resides in Illinois.

12. Chris Hall is an individual who resides in Colorado.

13. Cameron James is an individual who resides in Colorado.

14. Lok Sum Ida Lau is an individual who resides in Connecticut.

15. Joshua Lim is an individual who resides in Texas.

16. Daniel Madison is an individual who resides in Arizona.

17. Sawyer Mills is an individual who resides in Virginia.

18. Young Noh is an individual who resides in Texas.

19. Emily Pagano is an individual who resides in Arizona.

20. Jacklyn Pope is an individual who resides in Arizona.

21. Felicia Ragsdale is an individual who resides in Nevada.

22. Jackie Taylor is an individual who resides in California.

23. Paige Texas is an individual who resides in Florida.

24. Jenesis Tucker is an individual who resides in Texas.

25. Jon Watkins is individual who resides in Arizona.

26. Jonathan Wizard is an individual who resides in California.

27. UAA is a Delaware limited liability company with its principal place of business per the Arizona Secretary of State located at 732 W. Deer Valley Road, Phoenix, AZ 85027. It is authorized to do business in the state of Arizona and may be served through its registered agent, CT Corporation System, 3800 North Central Avenue, Ste. 460, Phoenix, AZ 85012.

28. United is a Delaware corporation with its headquarters located at 233 S. Wacker Drive, Chicago, IL 60606. It is authorized to do business in the state of Arizona and may be served through its registered agent, Corporation Service Company, 8825 N. 23rd Ave., Ste. 100, Phoenix, AZ 85021.

**JURISDICTION AND VENUE**

29.     This Court has subject matter jurisdiction over this action and the amount of damages sought by the Plaintiffs exceeds the minimum jurisdictional amount established for filing in this Court.

30.     This Court has personal jurisdiction over Defendants in this action because it arises out of Defendants' acts of consumer fraud occurring in the state of Arizona and/or concerning services that are the subject of this action that were to be provided in Arizona, specifically flight school education at UAA's facility in Maricopa County.

31.     Not only is United the owner of UAA—benefiting from the actions of UAA in Arizona—and made misrepresentations at issue in this case in Arizona, but it directed its marketing communications towards Plaintiffs and others with the purpose of inducing them to attend UAA in Arizona.

32.     This Court has general jurisdiction over UAA because it's principal place of business is located in Arizona.

33.     Venue is proper in Maricopa County, Arizona because the conduct complained of in and/or the services that are the subject of this action took place in Maricopa County.

34.     Pursuant to Ariz. R. Civ. P. 8(b)(2), Plaintiffs state that this action qualifies for Tier 3 discovery as set forth in Ariz. R. Civ. P. 26.2.

**GENERAL ALLEGATIONS**

A.     **United purchases UAA and begins advertising a one-year flight school program that would enable students to begin careers as commercial airline pilots.**

35.     United launched in 2019 its "United Aviate" career development program, intending to fill a need for thousands of new pilots over roughly the next decade.

36.     As part of growing its career development program, United purchased the Westwind School of Aeronautics Phoenix, LLC, and rebranded it as UAA. The airline signed the purchase agreement on February 5, 2020.

37.     United purchased the school, in part, to give the airline more visibility and direction over the recruitment, development, and training of future pilots.

38.     Upon information and belief, Westwind School of Aeronautics Phoenix, LLC, made representations to United Airlines that the flight school the carrier was purchasing had the resources to train hundreds of pilots per year.

39.     From the time of United's purchase to August of 2023, Dana Donati was the CEO of UAA.

40.     Upon information and belief, Ms. Donati made representations to United about UAA's ability to graduate certain students.

41.     Upon information and belief, to fulfill the promises she made to United, Ms. Donati personally intervened in the scheduling process for certain students to ensure those students progressed quicker, despite the affect it had on other students.

42.     United sought to graduate at least 300 students in UAA's first year.

43.     UAA and United represented to potential students, including Plaintiffs and class members, that UAA provided an intensive program to obtain the FAA certifications necessary to become a commercial pilot in one year.

44.     Defendants' representations were pervasive; including those made on UAA's website, websites United maintained such as unitedaviate.com, in emails to prospective students, and other marketing materials and campaigns about the flight school.

45.     The United Aviate website, shown below, represented that students would be able to complete the program within 12 months. The promise that a student could complete the program and be hired as a pilot within one year was central to the Defendants' entire plan to entice new students to UAA.



STEP 2    Start your training — 3 months
GO FROM ZERO FLIGHT HOURS TO GETTING YOUR PRIVATE PILOT LICENSE IN THREE MONTHS ∧

At United Aviate Academy, we will provide the best flight training to prepare you for a safe and successful career as a pilot. It is designed solely for applicants with little to no piloting experience, and the full course takes about a year to complete. You will be expected to commit to a full-time intensive course of study and flight activity a minimum of 5 days a week. Our innovative training program integrates:

- Computer-based instruction
- Ground training
- Aircraft flight training

Our 340,000 square-foot facility at Phoenix Goodyear Airport provides aspiring pilots with industry-leading resources, equipment and accommodations.

Once you get your Private Pilot License, you're ready for a final review to ensure you have maintained certain standards in order to be accepted into Aviate, United's industry-leading pilot development program.

STEP 3    Aviate acceptance
GAIN MORE VISIBILITY AND DIRECTION OVER YOUR CAREER TOWARD UNITED ∨

STEP 4    Finish your pilot training — 9 months
GAIN YOUR RATINGS AND CERTIFICATES ∨

46.     Defendants made these representations knowing and/or with reason to know that they did not have the necessary resources to accommodate and graduate within one year the students they intended to enroll and/or did enroll and from whom they accepted payments. As time went on, Defendants continued to make the same representations to new students despite knowing the representations were false.

47.     Defendants' representations were about fundamental characteristics of the service—education to become a commercial pilot—being offered.

48.     In particular, UAA and United initially represented to students that the program would have the following durations to obtain FAA certifications:

a.  Private Pilot Training ("PPL"): 2 months;

   b.  Instrument Rating: 2 months;

   c.  Commercial Single-engine ("CSE"): 3 months;

   d.  Certified Flight Instructor ("CFI"): 2 months;

   e.  Certified Flight Instructor (Instrument) ("CFII"): 1 month;

   f.  Commercial Multi-engine ("CME"): 1 month; and

   g.  Multi-engine Flight Instructor ("MEI"): 1 month.

49.   UAA charged students tuition between $71,250 and $100,250 between 2021 and 2024.

50.   UAA mapped out for students the following tuition schedule that had them obtaining all program certificates in 12 months:

| Training Month | Training Certificate | Room & Board | Scholarship Schedule | Loan Disbursement Schedule | Student Self Pay Schedule |
|---|---|---|---|---|---|
| 1 | Private | $1,250 | | 2 Months of Living Expenses | $5,937.50 |
| 2 | Private | $1,250 | | | $5,937.50 |
| 3 | Instrument | $1,250 | 35,625.00 | $35,625 + 4 Months Living Expenses | $5,937.50 |
| 4 | Instrument | $1,250 | | | $5,937.50 |
| 5 | Commercial SEL | $1,250 | | | $5,937.50 |
| 6 | Commercial SEL | $1,250 | | | $5,937.50 |
| 7 | Commercial SEL | $1,250 | 35,625.00 | $35,625 + 6 Months Living Expenses | $5,937.50 |
| 8 | Commercial SEL | $1,250 | | | $5,937.50 |
| 9 | Commercial MEL | $1,250 | | | $5,937.50 |
| 10 | CFI | $1,250 | | | $5,937.50 |
| 11 | CFI | $1,250 | | | $5,937.50 |
| 12 | CFII & MEI | $1,250 | | | $5,937.50 |
| Total | | $1,500 | $71,250 | $71,250 + 12 Months Living Expenses | $71,250 |

51.   Students were also responsible for fees and costs associated with books, knowledge exams, and check rides estimated to cost roughly $10,000.

52.     UAA and United partnered with ZuntaFi, Sallie Mae and Liberty Bank to provide student loans to cover tuition, fees, and costs, including living expenses.

53.     UAA and United also partnered with JPMorgan Chase to fund scholarships for some students. The scholarships were awarded through the following Professional Pilot Groups: Latino Pilots Association, National Gay Pilots Association, Organization of Black Aerospace Professionals, Professional Asian Pilots Association, Sisters of the Skies, and Women in Aviation International.

54.      The majority of students were forced to take out student loans to attend the UAA program.

55.     Those students agreed to take out loans with the expectation that they were going to attend a one-year program.

56.     Students agreed to take out loans with the expectation that they would be able to obtain gainful employment with a commercial airline following the program and pay off the loans over time.

57.     For many students who relied on student loans, such student loans were for $100,000 or more.

58.     The inaugural class progressed through the private pilot license portion of the program and things appeared to run smoothly.

59.     As UAA added more and more students each month, however, students began seeing reductions in their ability to acquire flight time.

60.     Students also began seeing substantial turnover in instructors, leading to frequent reassignments and rescheduling.

61.     Even after the flight time and instructor issues made clear to Defendants that they could not meet the one-year deadline represented to the general public on its website and in its

marketing, Defendants continued to make these representations to new potential consumer students.

62.     In the spring of 2024, students began learning that the issues at UAA were not one-off lapses but were instead evidence of UAA and United's misrepresentations as to the length and quality of the UAA program.

63.     UAA was accredited by the Accrediting Commission of Career Schools and Colleges ("ACCSC").

64.     In May of 2024, the ACCSC issued a warning to UAA for failing to comply with accreditation standards.

65.     ACCSC issued the warning, in part, because UAA failed to maintain enrollment at or below 325 students, a cap intended to ensure sufficient resources for students.

66.     Instead of complying with the enrollment cap, UAA *added* students, going from 338 students to 382 in March of 2024.

67.     ACCSC issued the warning, in part, because UAA failed to demonstrate it was financially sound and had the resources to meet student needs.

68.     Beginning around the time of the ACCSC warning letter, UAA began a campaign to expel students, targeting students who were delayed in completing the program and giving a variety of reasons to justify the expulsion.

69.     In August of 2024, ACCSC placed UAA on probation after the school failed to adequately address the commission's prior concerns, including the issues highlighted in the May 2024 warning letter.

70.     Ultimately, instead of complying with the ACCSC accreditation standards, UAA voluntarily withdrew effective January 15, 2025.

**B.  Defendants deceive Anant Bhattacharya into attending UAA and break their promises.**

71.     Anant Bhattacharya began with UAA in August of 2024.

72. Ms. Bhattacharya relocated to Arizona to attend UAA.

73. She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

74. Moreover, she was swayed to join the program by its representations that the program was open to everyone, no matter the person's race/religion/gender identity/sexual orientation.

75. UAA and United made these representations to Ms. Bhattacharya through their websites, through social media, and through emails.

76. After joining the program, Ms. Bhattacharya learned it was not as advertised.

77. She was assigned multiple different instructors and administrators over a short period of time, and a frequently changing schedule that precluded her from getting consistent instruction.

78. Moreover, Defendants' representations about inclusion and diversity were false. A transgender woman, Ms. Bhattacharya was told UAA could not offer her housing. UAA later offered to place Ms. Bhattacharya in the male dorms, but Ms. Bhattacharya was not comfortable with that option and declined.

79. In addition to tuition, Ms. Bhattacharya incurred tens of thousands of dollars in expenses in order to attend the program.

80. Ultimately, UAA expelled[1] Ms. Bhattacharya from the program in November of 2024, citing a lack of progress towards completing the private pilot license segment of the program but without considering the lack of consistent instruction.

C. **Defendants deceive Jennifer Bummer into attending UAA and break their promises.**

81. Jennifer Bummer began with UAA in March of 2023.

---

[1] UAA uses the euphemism "offboarded" to describe students it expels.

82.     Ms. Bummer was a small business owner who ran a yoga studio in San Diego before relocating to Arizona to attend UAA. The studio ultimately suffered financially due to Ms. Bummer's extended absence due to delays in the UAA program.

83.     She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

84.     She was also impressed with the school's affiliation with United.

85.      UAA and United made these representations to Ms. Bummer through their website and a commercial that aired between December and January of 2023 in San Diego.

86.     Ms. Bummer was a student until May of 2024, when UAA expelled her from the program.

87.     Ms. Bummer's expulsion came after she expressed concern to UAA about not being able to complete the program in one year and that she was racking up expenses.

88.     Before her expulsion, Ms. Bummer maintained a good status as a student, having never been directed to undergo remedial training.

89.     Ms. Bummer, as a result of UAA and United's misrepresentations, was forced to incur tens of thousands of dollars in expenses and tuition. Defendants' misrepresentations left Ms. Bummer with more than $100,000 in debt.

**D.  Defendants deceive Kevin Chapa into attending UAA and break their promises.**

90.     Kevin Chapa began with UAA in December of 2023.

91.     Mr. Chapa relocated to Arizona to attend UAA.

92.     He joined the program based on UAA and United's representations through email communications from UAA, speaking with a UAA representative, visiting the school itself, and through UAA's website and marketing materials.

93.     After joining the program, Mr. Chapa learned it was not as advertised.

94. He did not finish the program due to the school's inefficient teaching methods; the school frequently changed his instructors, precluding him from getting consistent instruction.

95. Because of the insufficient resources at the flight school, it took Mr. Chapa nearly a month to get another flight instructor to teach him.

96. Mr. Chapa, as a result of UAA and United's misrepresentations, was forced to incur tens of thousands of dollars in expenses and tuition.

97. Mr. Chapa left the program in December 2024.

**E. Defendants deceive Azia Charles into attending UAA and break their promises.**

98. Azia Charles began with UAA in March 2022.

99. Ms. Charles decided to relocate to Arizona to attend UAA because of her love for aviation and was eager for the opportunity to become a pilot.

100. She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

101. Additionally, she was swayed to join the program by its representations that the program was geared toward diversity, equity, and inclusion, no matter the person's background, ethnicity, or gender.

102. UAA and United made these representations to Ms. Charles through statements through their websites, social media, and emails.

103. After joining the program, Ms. Charles learned it was not as advertised.

104. She was assigned multiple different instructors over a short period of time, and each instructor taught differently.

105. Also, due to the lack of available aircrafts for training, she would go weeks without meeting with an instructor or flying.

106. In addition to tuition, Ms. Charles incurred thousands of dollars in expenses in order to attend the program.

107. Ultimately, UAA expelled Ms. Charles from the program in September of 2022, citing that she was taking too long to advance and that it looked bad for the program but without considering the lack of aircrafts and instructors available for consistent instruction.

**F. Defendants deceive Shawn Day into attending UAA and break their promises.**

108. Shawn Day began with UAA in October of 2023.

109. Mr. Day resigned from employment of 21 years in Fort Worth, Texas to relocate to Arizona to attend UAA so that he could pursue his dream of becoming a commercial airline pilot while his husband stayed behind at their home in Texas.

110. Mr. Day did his due diligence and research by touring other flight schools, reaching out to people on Facebook regarding UAA, and even did an informal tour of the school.

111. Although he had been accepted at and been approved for financial at another school in Texas, Mr. Day joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

112. He also joined the program because of the diversity on campus, and was impressed with the advertised culture.

113. UAA and United made these representations to Mr. Day through their website, social media, emails, and other marketing and advertising mechanisms.

114. In addition to tuition, Mr. Day incurred tens of thousands of dollars in expenses in order to attend the program.

115. In his first couple months in the program, he was flying 3-4 times a week or was in the simulator (barring weather or mechanical issues), and was scheduled regularly.

116. When Mr. Day's flight instructor became no longer available, he no longer received consistent instruction.

117. Due to UAA and United's lack of resources he was precluded from receiving consistent instruction and was therefore put into a remedial program.

118. Ultimately, UAA expelled Mr. Day from the program in May of 2024, citing that he was taking too long to advance but without considering the lack of instructors available for consistent instruction.

**G. Defendants deceive Blake Falls into attending UAA and break their promises.**

119. Blake Falls began with UAA in August 2022.

120. Mr. Falls relocated to Arizona to attend UAA. After being told there would be a dorm room available, Mr. Falls arrived in Arizona and was told he would need to relocate off campus and incur additional expenses due to a new reassignment of rooms.

121. He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

122. UAA and United made these representations through their website and through emails listing out timelines.

123. After joining the program, Mr. Falls learned it was not as advertised.

124. Mr. Falls completed private training in around 3 months, but UAA did not schedule him for the checkride to test out of private pilot training until 13 months into the program.

125. Mr. Falls could not timely advance through the program due to (a) not being scheduled for flights, (b) maintenance issues limiting available aircraft, (c) and a lack of available instructors. All the while, UAA continued to add additional students.

126. During several months, Mr. Falls would only be able to fly once or twice.

127. When Mr. Falls began training for his instrument rating, it took three weeks to schedule his first flight.

128. While training for his instrument rating, Mr. Falls was repeatedly reassigned instructors.

129. In addition to tuition, Mr. Falls incurred tens of thousands of dollars in expenses in order to attend the program.

130. Ultimately, UAA expelled Mr. Falls from the program in April of 2024, citing that he was taking too long to advance but without considering the lack of resources available for consistent instruction.

131. After expelling Mr. Falls, UAA requested that Mr. Falls remain in the United Aviate career program to work for United after going to school somewhere else.

**H. Defendants deceive Adela Gallegos into attending UAA and break their promises.**

132. Adela Gallegos began with UAA in December 2021.

133. Ms. Gallegos relocated to Arizona to attend UAA.

134. She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

135. Moreover, she was swayed to join the program by UAA and United's representations that this was the fastest way to become a commercial pilot.

136. Ms. Gallegos was in the inaugural class and was told that she would finish in 8-12 months.

137. She was still in the program two years later.

138. In July 2023, Ms. Gallegos was still a student, but became a certified flight instructor.

139. Between July 2023 and February 2024, she was working as a flight instructor and was also a student in the program.

140. As a flight instructor, Ms. Gallegos noticed that the students were not progressing through the program due to the lack of resources available.

141. Students in the program would not receive enough flight time to complete the program due to the lack of instructors and aircrafts.

142. UAA continued to take more students each month regardless of their failure to adequately provide sufficient resources for the students it already had.

143. Ms. Gallegos was an instructor, working effectively on-call seven days per week.

144. She was overworked because of the lack of instructors, which made it difficult to complete the program as a student.

145. She voiced her concerns regarding the program to the administrative department at UAA but was essentially ignored.

146. In addition to tuition, Ms. Gallegos incurred tens of thousands of dollars in expenses in order to attend the program.

147. Ms. Gallegos did not complete the program and left UAA in February of 2024.

**I. Defendants deceive Norbertha Garcia into attending UAA and break their promises.**

148. Norbertha Garcia began with UAA in October of 2022.

149. Ms. Garcia relocated to Arizona to attend UAA.

150. She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

151. UAA and United made these representations to Ms. Garcia through various marketing and advertising mechanisms.

152. After joining the program, Ms. Garcia learned it was not as advertised.

153. There were not enough aircrafts which precluded her from getting consistent instruction.

154. Additionally, while a student at UAA, an instructor grabbed her iPad out of her hands and slammed it against the simulator, frightening her.

155. Ms. Garcia voiced her concerns regarding "injustices," including to a mentor.

156. Ms. Garcia was the Latino Pilots Association Chapter Founder and President on campus.

157. During her time at UAA, a student action group was founded at UAA, due to students needing to be able to speak up and not face retaliation.

158.     In addition to tuition, Ms. Garcia incurred tens of thousands of dollars in expenses in order to attend the program.

159.     Ultimately, in June 2023, UAA terminated Ms. Garcia's enrollment in the program without providing any further explanation for the decision.

**J.   Defendants deceive Rick Gonzalez into attending UAA and break their promises.**

160.     Rick Gonzalez began with UAA in January of 2022.

161.     He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

162.     Moreover, he was swayed to join the program by UAA and United's representations that this was the fastest way to become a pilot at United Airlines.

163.     UAA and United made these representations to Mr. Gonzalez through various marketing and advertising mechanisms.

164.     After joining the program, Mr. Gonzalez learned it was not as advertised.

165.     He also noticed that at some point, UAA and United changed the representations on their website from the "most fast way to United" to the "most secure way to United."

166.     Due to the shortage of instructors and aircrafts, students in the program would not receive enough flight time to complete the program in one year, if at all.

167.     Mr. Gonzalez became an instructor at UAA and was essentially required to teach at the associated LET flight school.

168.     In addition to tuition, Mr. Gonzalez incurred tens of thousands of dollars in expenses in order to attend the program.

169.     Ultimately, Mr. Gonzalez completed the program in June of 2023 and left his position as a flight instructor there in December 2024.

**K. Defendants deceive Chris Hall into attending UAA and break their promises.**

170.     Chris Hall began with UAA in February of 2022.

171.   Mr. Hall relocated to Arizona to attend UAA.

172.   He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot, that he would have all seven ratings and certificates, and that it was a direct path to working as a pilot for United Airlines.

173.   UAA and United made these representations to Mr. Hall through their website and through emails.

174.   After joining the program, Mr. Hall learned it was not as advertised.

175.   There were instructor and aircraft shortages, and too many students enrolled in the program which caused significant delays.

176.   UAA and United continued urging students to join the program, and UAA continued to add new students, despite the lack of resources necessary to accommodate existing students.

177.   Mr. Hall was a student until February of 2023, when UAA expelled him from the program.

178.   In addition to tuition, Mr. Hall incurred tens of thousands of dollars in expenses in order to attend the program.

**L.  Defendants deceive Cameron James into attending UAA and break their promises.**

179.   Cameron James began with UAA in October of 2023.

180.   Mr. James sold his home and uprooted his life to relocate to Arizona to attend UAA.

181.   He joined the program based on UAA and United's representations about the program through email communications, and other marking and advertising mechanisms.

182.   Mr. James was already in United's Aviate career program, which was separate from UAA.

183.   Through the Aviate program, he heard about UAA and had high hopes for the program.

184.	Towards the end of his instrument rating, his primary instructor left the school, and it took almost two months for him to get a new instructor.

185.	UAA failed to provide adequate and accredited instructors for its students.

186.	Students who were without an assigned instructor, waiting on an instructor, or had an instructor that was busy or with limited availability had little to no access to simulators or flight time.

187.	Of concern, students in the program were sometimes evaluated by instructors who were not pilots themselves.

188.	Additionally, there was a lack of uniformity and standardization between the instructors at UAA which created confusion and delays.

189.	In addition to tuition, Mr. James incurred tens of thousands of dollars in expenses in order to attend the program.

190.	Ultimately, UAA expelled Mr. James from the program in June of 2024.

191.	Upon information and belief, UAA was expelling students from the program because of its internal issues in running the academy.

**M. Defendants deceive Lok Sum Ida Lau into attending UAA and break their promises.**

192.	Lok Sum Ida Lau began with UAA in September of 2022.

193.	Ms. Lau relocated to Arizona to attend UAA.

194.	She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot and would be hired upon completion of the course.

195.	UAA and United made these representations to Ms. Lau through their website.

196.	In addition to tuition, Ms. Lau incurred tens of thousands of dollars in expenses in order to attend the program.

197.    She was assigned to multiple different instructors over a short period of time, and there were not enough aircrafts which precluded her from getting consistent instruction.

198.    Ms. Lau did not complete the program because UAA eventually slowly stopped training her and failed to provide the necessary flight time in order to complete the program.

**N.  Defendants deceive Joshua Lim into attending UAA and break their promises.**

199.    Joshua Lim began with UAA in October of 2023.

200.    Mr. Lim relocated to Arizona to attend UAA.

201.    In addition to tuition, Mr. Lim incurred tens of thousands of dollars in expenses in order to attend the program.

202.    He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

203.    Moreover, he joined the program because he always wanted to be a pilot. He first started training in 2019, but financially it was very difficult. Once he heard about UAA, he thought it would be a good opportunity.

204.    UAA and United made these representations to Mr. Lim through their website.

205.    Upon information and belief, there was only one person working to communicate with all the potential students, she later resigned from UAA.

206.    Mr. Lim had significant gaps in his training due to the lack of resources at the school.

207.    UAA failed to provide enough flight instructors and aircrafts for students to progress through the program as advertised.

208.     Ultimately, UAA expelled Mr. Lim from the program in May of 2024 at the end of his private license training, citing a failure of certain requirements but without considering the lack of consistent instruction and flight time.

209.    Prior to being expelled, Mr. Lim, four other instructors, and some fellow students advocated for him to stay in the program, UAA denied his request.

**O. Defendants deceive Daniel Madison into attending UAA and break their promises.**

210.    Daniel Madison began with UAA in December of 2021.

211.    He joined the program based on UAA and United's representation that it would be a fast-track program.

212.    Defendants told him the program at UAA would take 12 months.

213.    After graduating from UAA in 12 months, United told him he would spend another 12 months as an instructor before working at the regional airlines to get to 1,500 hours building jet time. When that jet time was accrued, he'd then receive a position at United Airlines as a commercial pilot.

214.    UAA and United made these representations to Mr. Madison through their website and once he started the program.

215.    Initially, there were not too many students, enough aircrafts, and enough instructors.

216.    Mr. Madison was one of the first students to complete the private pilot license portion of the training.

217.    However, UAA was very disorganized, and continued to admit students into the program which created a lack of consistent instruction, a lack of flight time, and a lack of aircrafts for the students to use.

218.    In February of 2022, Mr. Madison was required to "reinterview" for UAA in order to continue with the program.

219.    He was the only student to fail the interview and was expelled in February 2022 for two months.

220.    After fellow students appealed on his behalf, UAA reinterviewed Mr. Madison and reinstated him around April 2022.

221.    Following his reinstatement, Mr. Madison was hired to work at UAA as an instructor around June 2023 while he continued as a student.

222. UAA continued to enroll hundreds of students without hiring additional instructors.

223. Because of this, UAA hired students who completed their CFI to become instructors.

224. In addition to tuition, Mr. Madison incurred tens of thousands of dollars in expenses in order to attend the program.

225. Ultimately, Mr. Madison did not complete the program and quit as an instructor at UAA.

**P. Defendants deceive Sawyer Mills into attending UAA and break their promises.**

226. Sawyer Mills began with UAA in December of 2021.

227. Mr. Mills relocated to Arizona to attend UAA.

228. In addition to tuition, Mr. Mills incurred tens of thousands of dollars in expenses in order to attend the program.

229. He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

230. UAA and United made these representations to Mr. Mills through social media, and email communications.

231. Mr. Mills also subscribed to the UAA newsletter and received many email blasts about the program which influenced his decision to attend.

232. After joining the program, Mr. Mills learned it was not as advertised.

233. There was a lack of resources available for the students which precluded him from getting consistent instruction.

234. There were approximately 20 aircrafts and 500 students waiting for flight time. Mr. Mills would sometimes wait weeks before he could get instruction.

235. In two years, Mr. Mills only received approximately 300 hours of flight time.

236.     Ultimately, Mr. Mills resigned from the program in August of 2023 due to delays in his training and cost.

**Q. Defendants deceive Young Noh into attending UAA and break their promises.**

237.     Young Noh began with UAA in November of 2023.

238.     Mr. Noh relocated to Arizona to attend UAA.

239.     He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot, with students also earning ratings in CFI, CFII, ME, and MEI.

240.     UAA and United made these representations to Mr. Noh through its website and other marketing and advertising mechanisms.

241.     After joining the program, Mr. Noh learned it was not as advertised.

242.     During the first six weeks, Mr. Noh flew 3-4 times per week and successfully completed 60 percent of the private pilot course. Beginning in the seventh week, Mr. Noh's ability to fly was substantially pared back, dropping to an average of only once per week.

243.     Mr. Noh experienced this lack of flight time due to the unavailability of instructors and poor scheduling and administration.

244.     In addition to tuition, Mr. Noh incurred tens of thousands of dollars in expenses in order to attend the program.

245.     Ultimately, Mr. Noh was expelled from the program and was told that he should take ownership for his failure without considering UAA's failure to provide enough instructors and aircrafts.

**R. Defendants deceive Emily Pagano into attending UAA and break their promises.**

246.     Emily Pagano began with UAA in March of 2022.

247.     She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

248. UAA and United made these representations to Ms. Pagano through their social media, through marketing and advertising mechanisms, and through commercials on aircrafts.

249. More than 2.5 years after enrolling at UAA, in October of 2024 Ms. Pagano completed the program.

250. In November 2024, Ms. Pagano was given a position at UAA but is rarely given the opportunity to fly.

251. Because UAA did not have enough instructors and aircrafts to properly train its students, Ms. Pagano struggled to get consistent instruction.

252. Upon information and belief, the school is struggling due to accreditation issues.

253. In addition to tuition, Ms. Pagano incurred tens of thousands of dollars in expenses in order to attend the program.

**S. Defendants deceive Jacklyn Pope into attending UAA and break their promises.**

254. Jacklyn Pope began with UAA in December of 2021.

255. Ms. Pope relocated from North Carolina to Arizona to attend UAA.

256. She joined the program based on UAA and United's representation that it would be a one-year program providing a path to becoming a commercial pilot. Defendants represented to her that the program would provide a path to a First Officers seat as a rated Commercial Airline Transportation Pilot.

257. Moreover, she was swayed to join the program by Defendants' representations that the program was open to everyone, no matter the person's race/religion/gender identity/sexual orientation or whether they had prior knowledge or experience in general aviation.

258. UAA and United made these representations to Ms. Pope through their websites, through emails, in virtual meetings with sponsored aviation organizations, and through other marketing and advertising mechanisms.

259. After joining the program, Ms. Pope learned it was not as advertised.

260. She was assigned multiple instructors, had gaps in her flights, and had very limited flight time, which precluded her from getting consistent instruction.

261. Despite advertising that students would get opportunities to fly five times per week, UAA did not give Ms. Pope such opportunities. Moreover, the school prioritized some students over others, including Ms. Pope, for flight time.

262. UAA continued to enroll students even though they lacked resources for the ones they already had in the program.

263. In addition to tuition, Ms. Pope incurred tens of thousands of dollars in expenses in order to attend the program.

264. Ms. Pope was expelled from the program in May of 2024 after being in the program for more than 2.5 years.

**T. Defendants deceive Felicia Ragsdale into attending UAA and break their promises.**

265. Felicia Ragsdale began with UAA in October of 2022.

266. Ms. Ragsdale relocated to Arizona to attend UAA.

267. She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

268. Moreover, she was swayed to join the program by its representations that students in the program would be prioritized in the selection process to become a commercial pilot for United.

269. UAA and United made these representations to Ms. Ragsdale through social media and other marketing and advertising mechanisms.

270. After joining the program, Ms. Ragsdale learned it was not as advertised.

271. She was assigned six different instructors over a short period of time, and a frequently changing schedule that prevented her from getting consistent instruction.

272.    In addition to tuition, Ms. Ragsdale incurred tens of thousands of dollars in expenses in order to attend the program.

273.    Ultimately, UAA expelled Ms. Ragsdale from the program in February of 2023, citing situational awareness and that she was not performing at the standard required for the number of hours flown but without considering the lack of consistent instruction.

**U.  Defendants deceive Jackie Taylor into attending UAA and break their promises.**

274.    Jackie Taylor began with UAA in October of 2023.

275.    Ms. Taylor relocated to Arizona to attend UAA.

276.    She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

277.    Moreover, she was swayed to join the program by its commitment to diversity and women in aviation.

278.    UAA and United made these representations to Ms. Taylor through their websites, and through various marketing and advertising mechanisms.

279.    After joining the program, Ms. Taylor learned it was not as advertised.

280.    She was not provided the training to fly consistently, as promised, which caused gaps in her training and precluded her from getting consistent flight time and proper instruction.

281.    In addition to tuition, Ms. Taylor incurred tens of thousands of dollars in expenses in order to attend the program.

282.    Ultimately, Ms. Taylor resigned from the program in May 2024, because of a lack of progress due to a lack of consistent instruction.

**V.  Defendants deceive Paige Texas into attending UAA and break their promises.**

283.    Page Texas began with UAA in March of 2023.

284.    Ms. Texas relocated to Arizona to attend UAA.

285. She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

286. Additionally, she was swayed to join the program by its representation that they had the best technology for training pilots.

287. UAA and United made these representations to Ms. Texas through their websites, through emails, and through other various marketing or advertising mechanisms.

288. After joining the program, Ms. Texas learned it was not as advertised.

289. Over the course of her time in the program, she had more than 13 different instructors which precluded her from getting consistent instruction.

290. Ms. Texas voiced her concerns regarding the program to the administrative department at UAA but was essentially ignored.

291. In addition to tuition, Ms. Texas incurred tens of thousands of dollars in expenses in order to attend the program.

292. Ultimately, Ms. Texas did not complete the program.

**W. Defendants deceive Jenesis Tucker into attending UAA and break their promises.**

293. Jenesis Tucker began with UAA in January of 2023.

294. Ms. Tucker relocated to Arizona to attend UAA.

295. She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

296. Moreover, she was swayed to join the program based on UAA's affiliation with United Airlines.

297. Ms. Tucker had a life-long career goal of becoming a pilot and was eager to begin her career as a commercial pilot.

298. UAA and United made these representations to Ms. Tucker through their website and through emails.

299.    After joining the program, Ms. Tucker learned it was not as advertised.

300.    Ms. Tucker continually would not get responses from her instructors, which prevented her from getting consistent instruction.

301.    Due to the lack of communication by the instructors, Ms. Tucker would go weeks without flight training and would fall behind.

302.    Because of the lack of consistency in training, lack of aircrafts and lack of instructors, she was precluded from progressing through the program as expected.

303.    In addition to tuition, Ms. Tucker incurred tens of thousands of dollars in expenses in order to attend the program.

304.    Ultimately, UAA expelled Ms. Tucker in May of 2024 during her last lesson for her instrument rating.

**X. Defendants deceive Jon Watkins into attending UAA and break their promises.**

305.    Jon Watkins began with UAA in September of 2022.

306.    In addition to tuition, Mr. Watkins incurred tens of thousands of dollars in expenses in order to attend the program.

307.    He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

308.    UAA made these representations to Mr. Watkins through their websites, and through speaking with a United Aviate representative.

309.    After joining the program, Mr. Watkins learned it was not as advertised.

310.    There was inconsistent instruction from his instructors with no clear expectations.

311.    Mr. Watkins was precluded from getting consistent flying because of the shortage of available instructors.

312.    During his time as a student in the program, Mr. Watkins voiced his concerns to management regarding a dangerous situation about flying in bad weather during his training. His

flight instructor forced him to fly in unsafe weather conditions, ultimately causing them to have to divert to an alternate airport.

313. Ultimately, UAA expelled Mr. Watkins from the program in January of 2024, citing a lack of progress but without consideration of the lack of consistent instruction.

**Y. Defendants deceive Jonathan Wizard into attending UAA and break their promises.**

314. Jonathan Wizard began with UAA in February 2023.

315. Mr. Wizard relocated to Arizona to attend UAA.

316. He joined the program based on UAA and United's representations that it would be a one-year program and a direct path to United employment as a commercial pilot.

317. UAA and United made these representations to Mr. Wizard through various marketing and advertising mechanisms, as well as through the nightly news.

318. During his time in the program, he experienced significant delays and inconsistent training resources. Administrators would favor certain students other than Mr. Wizard for flight scheduling and/or evaluations.

319. In addition to tuition, Mr. Wizard incurred tens of thousands of dollars in expenses in order to attend the program.

320. Mr. Wizard completed the commercial pilot certificate and instrument ratings but was forced to obtain his CFI, CFII, CME and MEI training at another school.

**Z. Plaintiffs and class members suffer career damages.**

321. In addition to the direct damages that Plaintiffs and class members suffered as a result of Defendants' conduct, Plaintiffs and class members suffered consequential damages in the form of lost economic opportunity.

322. The UAA program was promised to be a one-year program that would prepare students for a career as a commercial pilot.

323. Defendants' failure to live up to the representations they made about the program delayed or prevented Plaintiffs and class members from careers as commercial pilots, thereby delaying or preventing them from obtaining the economic benefits of working as a commercial pilot, including salaries and bonuses customarily earned by commercial pilots.

**CLASS ALLEGATIONS**

324. Plaintiffs bring this action as a class action on their own behalf and on behalf of all other persons similarly situated as members of the following proposed class and seek to certify and maintain it as a class action under Rule 23 of the Arizona Rules of Civil Procedure, subject to amendment and additional discovery:

    a. Victimized Students: United Aviate Academy students who attended UAA at any time between December of 2021 through January 15, 2025.

325. Plaintiffs are members of the proposed class they seek to represent. Plaintiffs are students who enrolled at UAA at various times since 2021 and were all victims of Defendants' misrepresentations.

326. Excluded from the Class are:

    a. Defendants, including any entity or division in which Defendants have a controlling interest, along with their legal representatives, officers, directors, agents, employees who were not otherwise students, assigns, heirs, successors, and wholly or partly owned subsidiaries or affiliates;

    b. The Judge to whom this case is assigned, the Judge's staff and immediate family; and

    c. Any Class counsel or their immediate family members.

327.    Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that any allegations should be amended or the Class should be expanded, divided into sub-classes, or modified in any other way.

328.    Plaintiffs and the Putative Class have been damaged as a result of Defendants' failures as set forth herein and seek recovery of those damages from Defendants.

**A.  The Class is Ascertainable and Satisfies the Class Action Prerequisite of Numerosity.**

329.    Upon information and belief, this action meets the numerosity requirement of Ariz. R. Civ. P. 23(a)(1) because the Putative Class includes hundreds of students whom Defendants victimized.

330.    While the exact number of Class Members is not yet known, a precise number may be ascertained from objective criteria such as enrollment records kept by the Defendants in the ordinary course of business.

331.    The resolution of the claims of the Class Members in a single action will provide substantial benefits to all parties and ease the administrative burden on the Court.

332.    Class Members may be notified of the pendency of this action by Court-approved notice methods.

**B.  This Action Satisfies the Class Action Prerequisite of Predominance of Common Issues.**

333.    There are questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, making it appropriate to bring this action under Ariz. R. Civ. P. 23(a)(2) and (b)(3).

334.    The answers to these common questions will advance resolution of the litigation as to all Class Members. Common legal and factual issues include:

    a.    Whether Defendants engaged in the conduct alleged herein; and

    b.    Whether Defendants made unlawful and/or misleading representations or material omissions with respect to the services UAA was to provide to students.

**C. This Action Satisfies the Class Action Prerequisite of Typicality.**

335. Pursuant to Ariz. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of the claims of the Class Members and arise from the same course of conduct by Defendants.

336. Plaintiffs have incurred damages by Defendants' conduct.

337. The factual bases of Defendants' actions are common to all Class Members and represent a common thread of misconduct resulting in common injury to all Class Members.

338. The relief Plaintiffs seek is typical of the relief sought for absent Class Members.

**D. This Action Satisfies the Class Action Prerequisite of Adequacy of Representation.**

339. Plaintiffs, as the representative parties, will fairly and adequately protect the interests of the Class.

340. Their interests, as well as the interests of their counsel, do not conflict with the interests of other members of the Class they seek to represent.

341. Further, Plaintiffs have retained counsel competent and well experienced in class actions and commercial litigation.

342. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

343. Neither the Plaintiffs nor their counsel has interests adverse to the Class.

**E. A Class Action is Superior to Other Methods of Adjudication.**

344. The class action mechanism is superior to any other available means of fairly and efficiently adjudicating this case.

345. Given that a number of students impacted by Defendants' misrepresentations, it is impracticable for Plaintiffs and the Class to litigate their respective claims individually due to the risk of producing inconsistent or contradictory judgments, generating increased delays and expense, and wasting judicial resources.

346. No unusual difficulties are likely to be encountered in the management of this class action.

347. Therefore, the class action mechanism minimizes prospective management challenges and provides the efficiency of a single adjudication under the comprehensive oversight of a single court.

## CLAIMS FOR RELIEF

### First Claim for Relief:
### Consumer Fraud

348. Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

349. Plaintiffs assert this claim on behalf of themselves and all others similarly situated.

350. The Arizona Consumer Fraud Act provides:

The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1522(A).

351. UAA's offer of education services qualifies as "merchandise" under the Consumer Fraud Act.

352. UAA "sold" its "merchandise"—the education services—to Plaintiffs and members of the putative class in exchange for tuition and fee payments.

353. UAA made false promises and/or misrepresentations to Plaintiffs and members of the putative class with respect to the length of time the UAA program would take, the resources available to students, and otherwise the quality and cost of the program.

354. United made false promises and/or misrepresentations to Plaintiffs and members of the putative class with respect to the length of time the UAA program would take, the resources available to students, and otherwise the quality and cost of the program.

355. UAA and United made those false promises and misrepresentations with the intent that Plaintiffs and members of the putative class would rely on them.

356. Plaintiffs and members of the putative class reasonably relied on Defendants' false representations and/or omissions when deciding to enroll with UAA.

357. Defendants' misrepresentations concerned the fundamental qualities of the "merchandise" such that it cannot be said a consumer did not rely on the misrepresentations when choosing to purchase the advertised services.

358. Defendants' made their misrepresentations and false promises through a variety of advertisements, including websites, social media posts, emails, and television broadcasts.

359. Plaintiffs and the members of the putative class suffered damages as a direct and proximate result of Defendants' consumer fraud.

360. Defendants' deceptive practices were wanton, reckless, spiteful, motivated by ill-will, and/or were made with reckless indifference to the rights, interests, and feelings of Plaintiffs and members of the putative class, therefore entitling them to an award of punitive damages.

**Second Claim for Relief:**
**Negligent Misrepresentation**

361. Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

362. Plaintiffs assert this claim on behalf of themselves and all others similarly situated.

363. Defendants owed Plaintiffs and members of the putative class a duty to exercise reasonable care not to make misrepresentations as to the character or quality of services they offered.

364. Similarly, Defendants owed Plaintiffs and members of the putative class a duty to exercise reasonable care to disclose:

  a. matters known to them that they know to be necessary to prevent their partial or ambiguous statement of the facts from being misleading;

  b. subsequently acquired information that they know will make untrue or misleading a previous representation that when made was true or believed to be so;

  c. the falsity of a representation not made with the expectation that it would be acted upon, if they subsequently learn that the other is about to act in reliance upon it in a transaction with them; and

  d. facts basic to the transaction, if they know that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

365. Defendants breached that duty by unreasonably misrepresenting the character and quality of the UAA program, including that it was a one-year program that was sufficiently resourced and that would enable students to begin careers as commercial airline pilots.

366. Plaintiffs and members of the putative class reasonably relied on Defendants' misrepresentations when they agreed to enroll with UAA.

367. Defendants' misrepresentations concerned the fundamental qualities of the UAA program such that it cannot be said a student did not rely on the misrepresentations when choosing to enroll in the program.

368. Plaintiffs suffered damages as a direct and proximate result of Defendants' negligent misrepresentations.

369.	Defendants' negligent misrepresentations were wanton, reckless, spiteful, motivated by ill-will, and/or were made with reckless indifference to the rights, interests, and feelings of Plaintiffs and members of the putative class, therefore entitling them to an award of punitive damages.

**Third Claim for Relief:**
**Fraudulent Misrepresentation**

370.	Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

371.	Plaintiffs assert this claim on behalf of themselves and all others similarly situated.

372.	Defendants made false representations to Plaintiffs and members of the putative class that the UAA program was a one-year program that was sufficiently resourced and that would enable students to begin careers as commercial airline pilots.

373.	A misrepresentation is fraudulent if the maker:

a.	knows or believes that the matter is not as he represents it to be,

b.	does not have the confidence in the accuracy of his representation that he states or implies, or

c.	knows that he does not have the basis for his representation that he states or implies.

374.	Defendants' misrepresentations were fraudulent in that they either knew the representations were false or knew that they were ignorant as to whether the representations were false.

375.	Plaintiffs and members of the putative class were ignorant as to the falsity of Defendants' misrepresentations.

376.	Plaintiffs and members of the putative class reasonably and justifiably relied on Defendants' misrepresentations.

377.	Defendants' misrepresentations concerned the fundamental qualities of the UAA program such that it cannot be said a student did not rely on the misrepresentations when choosing

to enroll in the program or when choosing to enter into student loan agreements in connection with enrolling with UAA.

378.     As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs and members of the putative class suffered damages.

379.     Defendants' fraudulent misrepresentations were wanton, reckless, spiteful, motivated by ill-will, and/or were made with reckless indifference to the rights, interests, and feelings of Plaintiffs and members of the putative class, therefore entitling them to an award of punitive damages.

**Fourth Claim for Relief:**
**Fraudulent Inducement**

380.     Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

381.     Plaintiffs assert this claim on behalf of themselves and all others similarly situated.

382.     Defendants made false representations to Plaintiffs and members of the putative class that the UAA program was a one-year program that was sufficiently resourced and that would enable students to begin careers as commercial airline pilots.

383.     Defendants' misrepresentations were material.

384.     Defendants knew their representations about the program were false or knew that they were ignorant as to whether the representations were true.

385.     Defendants intended that Plaintiffs and members of the putative class would act on the misrepresentations by enrolling with UAA and by applying for and obtaining student loans in order to attend UAA.

386.     Plaintiffs and members of the putative class did not know Defendants' representations were false, and they reasonably and justifiably relied on the representations when enrolling with UAA and obtaining student loans.

387. Defendants' misrepresentations concerned the fundamental qualities of the UAA program such that it cannot be said a student did not rely on the misrepresentations when choosing to enroll in the program or when choosing to enter into student loan agreements in connection with enrolling with UAA.

388. As a result of Defendants' misrepresentations, Plaintiffs and members of the putative class were fraudulently induced into enrolling with UAA and entering into student loan agreements in connection with enrolling with UAA.

389. Defendants' fraudulent inducement of Plaintiffs and members of the putative class caused them to suffer damages.

390. Defendants' fraudulent misrepresentations were wanton, reckless, spiteful, motivated by ill-will, and/or were made with reckless indifference to the rights, interests, and feelings of Plaintiffs and members of the putative class, therefore entitling them to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request the Court enter judgment in their favor:

    a. Certify the class;

    b. Award Plaintiffs general, compensatory, consequential, punitive, and nominal damages at an amount to be determined at trial;

    c. Award class members general, compensatory, consequential, punitive, and nominal damages at an amount to be determined at trial;

    d. Award Plaintiffs pre- and post-judgment interest at the highest legal rates;

    e. Award class members pre- and post-judgment interest at the highest legal rates;

    f. Award Plaintiffs their attorneys' fees;

g.  Award class members their attorneys' fees;

h.  Award Plaintiffs their costs and expenses, including expert witness costs, as provided by law;

i.  Award class members their costs and expenses, including expert witness costs, as provided by law;

j.  Award Plaintiffs such further relief that the Court deems just and proper; and

k.  Award class members such further relief that the Court deems just and proper.

### JURY DEMAND

Plaintiffs and the Class demand a jury as to all issues so triable.


DATED this 21st day of February, 2025.

**BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.**

By */s/ David K. TeSelle*
David K. TeSelle
Patrick M. Sweet
Sophia E. Kyziridis
*Attorneys for Plaintiffs*

**EXHIBIT 2**

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

**Plaintiff's Attorney:**
David K TeSelle
Bar Number: 032057, issuing State: AZ
Law Firm: Burg Simpson Eldredge Hersh & Jardine PC
40 Inverness Dr East
Englewood, CO 80112
Telephone Number: (303)792-5595
Email address: dteselle@burgsimpson.com

CV2025-006742

**Plaintiffs:**

Anant Bhattacharya

Jennifer Bummer

Kevin Chapa

Azia Charles

Shawn Day

Blake Falls

Adela Gallegos

Norbertha Garcia

Rick Gonzalez

Chris Hall

Cameron James

Lok Sum Ida Lau

Joshua Lim

Daniel Madison

AZTurboCourt.gov Form Set #1116283

Sawyer Mills

Young Noh

Emily Pagano

Jacklyn Pope

Felicia Ragsdale

Jackie Taylor

Paige Texas

Jenesis Tucker

Jon Watkins

Jonathan Wizard

**Defendants:**
Westwind School of Aeronautics Phoenix LLC d.b.a. United Aviate Academy

United Airlines, Inc.

Discovery Tier t3

Case Category: Other Civil Case Categories
Case Subcategory: Consumer Fraud

AZTurboCourt.gov Form Set #11162831

EXHIBIT

3

Person/Attorney Filing: David K TeSelle
Mailing Address: 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Phone Number: (303)792-5595
E-Mail Address: dteselle@burgsimpson.com
[ ☐ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 032057, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Anant Bhattacharya, et al.
Plaintiff(s),
v.
Westwind School of Aeronautics
Phoenix LLC d.b.a. United Aviate
Academy, et al.
Defendant(s).

Case No. **CV2025-006742**

**CERTIFICATE OF
COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this February 21, 2025

By: David K TeSelle /s/
Plaintiff/Attorney for Plaintiff

**EXHIBIT 4**

Person Filing: David K TeSelle
Address (if not protected): 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Telephone: (303)792-5595
Email Address: dteselle@burgsimpson.com
Representing [ ] Self or [☒ ] Attorney for:
Lawyer's Bar Number: 032057, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
C. Cruz, Deputy
2/21/2025 5:19:32 PM
Filing ID 19379334

## SUPERIOR COURT OF ARIZONA
### IN MARICOPA COUNTY

Case Number: **CV2025-006742**

Anant Bhattacharya, et al.

Name of Plaintiff

**SUMMONS**

AND

Westwind School of Aeronautics Phoenix LLC d.b.a.
United Aviate Academy, et al.

Name of Defendant

**WARNING**: This is an official document from the court that affects your rights. Read this carefully.
If you do not understand it, contact a lawyer for help.

Westwind School of Aeronautics Phoenix LLC d.b.a.
**FROM THE STATE OF ARIZONA TO:** United Aviate Academy

Name of Defendant

1.  **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2.  If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the document in this case.

*AZturboCourt.gov Form Set #1116283I*

3.  If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served.  If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.  Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.  Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 21, 2025*

*JEFF FINE*
Clerk of Superior Court

By: *C. CRUZ*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

EXHIBIT

5

Person Filing: David K TeSelle
Address (if not protected): 40 Inverness Dr East
City, State, Zip Code: Englewood, CO 80112
Telephone: (303)792-5595
Email Address: dteselle@burgsimpson.com
Representing [ ☐ ] Self or [ ☒ ] Attorney for:
Lawyer's Bar Number: 032057, Issuing State: AZ

Clerk of the Superior Court
*** Electronically Filed ***
C. Cruz, Deputy
2/21/2025 5:19:32 PM
Filing ID 19379335

# SUPERIOR COURT OF ARIZONA
## IN MARICOPA COUNTY

Case Number: **CV2025-006742**

Anant Bhattacharya, et al.
_____
Name of Plaintiff

**SUMMONS**

AND

Westwind School of Aeronautics Phoenix LLC d.b.a.
United Aviate Academy, et al.
_____
Name of Defendant

| |
|---|
| **WARNING**: This is an official document from the court that affects your rights. Read this carefully. If you do not understand it, contact a lawyer for help. |

**FROM THE STATE OF ARIZONA TO:** United Airlines, Inc.
_____
Name of Defendant

1. **A lawsuit has been filed against you.** A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2. If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to Clerk of the Superior Court, or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the document in this case.

AZturboCourt.gov Form Set #1116283

3.  If this "Summons" and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your "Response" or "Answer" must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this "Summons" and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

4.  You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court.

5.  Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least ten (10) judicial days before your scheduled court date.

6.  Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case at least ten (10) judicial days in advance of your scheduled court date.

SIGNED AND SEALED this Date: *February 21, 2025*

*JEFF FINE*
Clerk of Superior Court

By: *C. CRUZ*
Deputy Clerk



If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

# EXHIBIT 6

*Attorney or Party without Attorney:*
David K. Teselle
BURG SIMPSON ELDREDGE HERSH & JARDINE PC
2390 E. Camelback Road, Ste. 403
Phoenix, AZ 85016
TELEPHONE No.: (602) 777-7000

*Attorney for:*

*Ref No. or File No.:*
1003829.07.

**CLERK OF THE SUPERIOR COURT
FILED**

MAR 03 2025   2:19 PM

V. Diaz, Deputy

*Insert name of Court, and Judicial District and Branch Court:*
In MARICOPA COUNTY SUPERIOR COURT in and for the County of MARICOPA

*Petitioner:* ANANT BHATTACHARYA; ET AL

*Respondent:* WESTWIND SCHOOL OF AERONAUTICS PHOENIX, LLC D.B.A UNITED AVIATE ACADEMYM A DELAWARE LIMITED LIABILITY COMPANY, AND UNITED AIRLINES, INC., A DELAWARE CORPORATION

| CERTIFICATE OF SERVICE | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER: |
|---|---|---|---|---|
| | | | | CV2025-006742 |

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct. At the time of service I was at least 21 years of age and authorized to serve process in this case.

I served copies of the SUMMONS; CIVIL CLASS COMPLAINT AND DEMAND FOR JURY TRIAL ; CERTIFICATE OF COMPULSORY ARBITRATION

a. Party served       UNITED AIRLINES, INC., BY SERVICE UPON ITS STATUTORY AGENT, CORPORATION SERVICE COMPANY

b. Person Served      Carly Cardenas - Agent / Authorized to Accept
   Age: 31 - 35 Race: Caucasian Sex: Female Eyes: Height: 5'7 - 6'0 Weight: 121-140 Lbs Hair: Black

Address where served: 7955 S Priest Dr Ste 102
                     Tempe, AZ 85284-1050

5. I served the party
   a. I personally delivered the documents to the party or person authorized to
      receive service of process for the party (1) on: 2/27/2025    (2) at: 12:20 PM

Person who served papers:
NATIONWIDE LEGAL   Name: Richard F. Acree
   County of Maricopa, MC-5966              The fee for service was: $ 91.00
   3150 North 24th Street, Ste. A-102
   Phoenix, AZ 85016
   (602) 256-9700
   www.nationwidelegal.com

Date: February 27, 2025

_(Richard F. Acree)_



AZ372440

# EXHIBIT 7

| Attorney or Party without Attorney: | | CLERK OF THE SUPERIOR COURT |
|---|---|---|

**Attorney or Party without Attorney:**
David K. Teselle
BURG SIMPSON ELDREDGE HERSH & JARDINE PC
2390 E. Camelback Road, Ste. 403
Phoenix, AZ 85016
TELEPHONE No.: (602) 777-7000

Attorney for:

Ref No. or File No.:
1003829.07.

CLERK OF THE SUPERIOR COURT
FILED
MAR 04 2025 2:47PM
V. Diaz, Deputy

Insert name of Court, and Judicial District and Branch Court:
In MARICOPA COUNTY SUPERIOR COURT in and for the County of MARICOPA

Petitioner: ANANT BHATTACHARYA; ET AL

Respondent: WESTWIND SCHOOL OF AERONAUTICS PHOENIX, LLC D.B.A UNITED AVIATE ACADEMYM A DELAWARE LIMITED LIABILITY COMPANY, AND UNITED AIRLINES, INC., A DELAWARE CORPORATION

| CERTIFICATE OF SERVICE | HEARING DATE: | TIME: | DEPT.: | CASE NUMBER: |
|---|---|---|---|---|
| | | | | CV2025-006742 |

I declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct. At the time of service I was at least 21 years of age and authorized to serve process in this case.

I served copies of the SUMMONS; CIVIL CLASS COMPLAINT AND DEMAND FOR JURY TRIAL ; CERTIFICATE OF COMPULSORY ARBITRATION

a. Party served     WESTWIND SCHOOL OF AERONAUTICS PHOENIX, LLC D.B.A UNITED AVIATE ACADEMY, BY SERVICE UPON ITS STATUTORY AGENT, CT CORPORATION SYSTEM

b. Person Served     Dementria Tsosie - Clerk / Authorized to Accept
    Age: 31 - 35 Race: Native American Sex: Female Eyes: Brown Height: 5'1 - 5'6 Weight: 121-140 Lbs Hair: Black

Address where served: 3800 N Central Ave Ste 460
    Phoenix, AZ 85012-1995

5. I served the party
  a. I personally delivered the documents to the party or person authorized to
    receive service of process for the party (1) on: 2/28/2025   (2) at: 9:45 AM

Person who served papers:
NATIONWIDE LEGAL   Name: Richard F. Acree
  County of Maricopa, MC-5966            The fee for service was: $ 74.20
  3150 North 24th Street, Ste. A-102
  Phoenix, AZ 85016
  (602) 256-9700
  www.nationwidelegal.com

Date: February 28, 2025

_____
(Richard F. Acree)




AZ372433

EXHIBIT 8

Law Offices
HINSHAW & CULBERTSON LLP
2375 E. Camelback Rd.
Suite 410
Phoenix, AZ 85016
602-631-4400
602-631-4404
bdunn@hinshawlaw.com
msmith@hinshawlaw.com

Bradley L. Dunn (028897)
M. Victoria Smith (036334)
Attorneys for Defendant United Airlines, Inc.

IN THE ARIZONA SUPERIOR COURT

MARICOPA COUNTY

| | |
|---|---|
| ANANT BHATTACHARYA, et al., | No. CV2025-006742 |
| Plaintiffs, | |
| v. | **NOTICE OF FILING NOTICE OF REMOVAL** |
| WESTWIND SCHOOL OF AERONAUTICS PHOENIX, LLC, d.b.a. UNITED AVIATE ACADEMY, a Delaware limited liability corporation, et al., | (Hon. Melissa Julian) |
| Defendants, | |

PLEASE TAKE NOTICE that on March 19, 2025, Defendant United Airlines, Inc. (hereinafter "United"), by and through undersigned counsel, gives notice to the Clerk of the Maricopa County Superior Court and Plaintiffs, that United is removing this action to the United States District Court for the District of Arizona pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119 Stat. 4, codified in pertinent part at 28 U.S.C. §§ 1132(d) and 1453, and pursuant to 28 U.S.C. §§ 1441 and 1446, as Plaintiffs' Complaint (1) includes alleged class members whose citizenship is diverse from that of

United, (2) has at least 100 putative class members, and (3) places in controversy an aggregate amount in excess of $5,000,000. A copy of the Notice is attached as **Exhibit A**.

DATED this 19th day of March, 2025.

HINSHAW & CULBERTSON LLP

/s/ Bradley L. Dunn
Bradley L. Dunn
M. Victoria Smith
*Attorneys for Defendant United Airlines, Inc.*

**ORIGINAL** of the foregoing e-filed
this 19th day of March, 2025

**COPY** of the foregoing mailed and e-mailed
this 19th day of March, 2025, to:

David K. TeSelle
Patrick M. Sweet
Sophia E. Kyziridis
BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C.
2390 East Camelback Road, Suite 403
Phoenix, Arizona 84016
*dteselle@burgsimpson.com psweet@burgsimpson.com*
*skyziridis@burgsimpson.com*
*Attorneys for Plaintiffs*

By: /s/ Candice J. Cromer

2

# EXHIBIT A

1  Bradley L. Dunn (AZ Bar No. 028897)
   M. Victoria Smith (AZ Bar No. 036334)
2  HINSHAW & CULBERTSON LLP
   2375 East Camelback Road, Suite 410
3  Phoenix, AZ 85016
   (602) 631-4400
4  bdunn@hinshawlaw.com
   msmith@hinshawlaw.com
5  *Attorneys for Defendant United Airlines, Inc.*

6

**IN THE UNITED STATES DISTRICT COURT**
7          **FOR THE DISTRICT OF ARIZONA**

8  Anant Bhattacharya, Jennifer Bummer, Kevin          Case No.:
   Chapa, Azia Charles, Shawn Day, Blake Falls,
9  Adela Gallegos, Norbertha Garcia, Rick
   Gonzalez, Chris Hall, Cameron James, Lok Sum        **DEFENDANT UNITED AIRLINES, INC.'S**
10 Ida Lau, Joshua Lim, Daniel Madison, Sawyer         **NOTICE OF REMOVAL**
   Mills, Young Noh, Emily Pagano, Jacklyn
11 Pope, Felicia Ragsdale, Jackie Taylor, Paige
   Texas, Jenesis Tucker, Jon Watkins, Jonathan
12 Wizard, individually and on behalf of
   themselves and others similarly situated,
13
                         Plaintiffs,
14
            vs.
15
   Westwind School of Aeronautics Phoenix, LLC
16 d.b.a. United Aviate Academy, a Delaware
   limited liability company, and United Airlines,
17 Inc., a Delaware corporation,
18                       Defendants.

19

20         PLEASE TAKE NOTICE THAT Defendant United Airlines, Inc. ("United") hereby

21 removes the above-captioned lawsuit from the Arizona Superior Court in Maricopa County, Case

22 No. CV2025-006742, to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"),

23 Pub. L. 109-2, 119 Stat. 4, codified in pertinent part at 28 U.S.C. §§ 1132(d) and 1453, and

pursuant to 28 U.S.C. §§ 1441 and 1446. In support of this Notice of Removal, United states as follows.

## I.    <u>Basis for Removal.</u>

1.    This putative class action is properly removed to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because United has satisfied the procedural requirements for removal, and because this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

2.    CAFA jurisdiction exists because the action (1) includes alleged class members whose citizenship is diverse from that of United, (2) has at least 100 putative class members, and (3) places in controversy an aggregate amount in excess of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5)-(6).

## II.    <u>Procedural History and Plaintiffs' Putative Class Claims.</u>

3.    Anant Bhattacharya, Jennifer Bummer, Kevin Chapa, Azia Charles, Shawn Day, Blake Falls, Adela Gallegos, Norbertha Garcia, Rick Gonzalez, Chris Hall, Cameron James, Lok Sum Ida Lau, Joshua Lim, Daniel Madison, Sawyer Mills, Young Noh, Emily Pagano, Jacklyn Pope, Felicia Ragsdale, Jackie Taylor, Paige Texas, Jenesis Tucker, Jon Watkins, and Jonathan Wizard (the "Plaintiffs") filed their Civil Class Complaint and Demand for Jury Trial (the "Complaint" or "Compl."), on behalf of themselves and others similarly situated, against United and Westwind School of Aeronautics Phoenix, LLC d.b.a. United Aviate Academy ("UAA") on February 21, 2025. United was served with the Complaint on February 27, 2025, through its registered agent. *See* State Court Record including Complaint and service papers, attached as Exhibits 1-8.

4. In the Complaint, Plaintiffs claim United and UAA engaged in consumer fraud and deceptive trade practices by making misrepresentations regarding UAA's flight school programs. *See generally* Exh. 1 (Compl.).

5. Plaintiffs' proposed class is defined as follows:

United Aviate Academy students who attended UAA at any time between December of 2021 through January 15, 2025.

*Id.* at ¶324(a).

6. United has not yet filed a response to the Complaint, and United does not concede through this Notice that Plaintiffs have stated a viable claim for relief or that United is liable to Plaintiffs or any putative class member in any respect.

**III.    Procedural History and Plaintiffs' Putative Class Claims**

7. United has complied with all procedural requirements for removal.

8. This Notice of Removal has been filed within 30 days of service of the Complaint on United, and it accordingly is timely. *See* 28 U.S.C. § 1446(b)(1).

9. Venue is proper in this Court because the Arizona Superior Court in Maricopa County is located in the Phoenix Division of the United States District Court for the District of Arizona. *See* 28 U.S.C. § 1441(a) (a state-filed action subject to federal jurisdiction may be removed "to the district court . . . for the district and division embracing the place where such action is pending").

10. Pursuant to LRCiv 3.6(b) of the Local Rules of Civil Procedure, attached as Exhibit A is a Verification that Exhibits 1 through 8 are true and complete copies of all pleadings and other documents filed in the state court proceedings.

11. As required under 28 U.S.C. § 1446(a), United has attached copies of all process, pleadings, and orders served upon United with respect to this action. *See* Exhs. 1-8; *see also* a

complete copy of the most recent version of the Arizona Superior Court in Maricopa County's docket sheet, attached as Exhibit 9.

12.     As required under 28 U.S.C. § 1446(d) and LRCiv 3.6(a) of the Local Rules of Civil Procedure, a copy of this Notice of Removal is being served upon Plaintiffs' counsel, and a copy is being filed with the Clerk of the Superior Court of Arizona Superior Court in Maricopa County.

## IV.     This Court Has Subject Matter Jurisdiction Under CAFA.

13.     Under CAFA, this Court has diversity jurisdiction over any asserted class action that: (1) includes at least one class member whose citizenship is diverse from that of at least one defendant; (2) has at least 100 putative class members; and (3) involves an aggregate amount in controversy of $5,000,000 or more.[1]   *See* 28 U.S.C. § 1332(d)(2), (d)(5)-(6).

14.     United denies that any class could properly be certified in this matter or that Plaintiffs are entitled to any damages or other relief. However, based on the information discussed below and the allegations in Plaintiffs' pleading, all requirements for jurisdiction under CAFA are met in this case.

### A.     There is Minimal Diversity.

15.     CAFA's minimal diversity requirement is satisfied because at least one of the Plaintiffs and United are citizens of different states.

16.     United is informed and believes, and on that basis alleges, that Plaintiffs Bhattacharya and Texas are citizens of Florida; Plaintiffs Bummer, Taylor and Wizard are citizens

---

[1] A "class action" includes any civil action filed under Federal Rule of Civil Procedure 23 or "similar State statute or rule of judicial procedure." 28 U.S.C. § 1332(d)(1)(B). Plaintiffs asserted their class allegations pursuant to Arizona's similar class action rule. *See* Exh. 1 (Compl.) at ¶¶ 324-35 (citing Rule 23 of the Arizona Rules of Civil Procedure).

of California; Plaintiffs Chapa, Lim, Noh and Tucker are citizens of Texas; Plaintiff Charles is a citizen of Georgia; Plaintiffs Day, Falls, Garcia, Madison, Pagano, Pope, and Watkins are citizens of Arizona; Plaintiff Gallegos is a citizen of New Mexico; Plaintiffs Hall and James are citizens of Colorado; Plaintiff Lau is a citizen of Connecticut; Plaintiff Mills is a citizen of Virginia; and Plaintiff Ragsdale is a citizen of Nevada.

17. United is not a citizen of Florida, California, Texas, Georgia, Arizona, New Mexico, Colorado, Connecticut, Virginia, or Nevada. United is a Delaware corporation with its principal place of business in Illinois. *See* Exh. 1, at ¶ 28 (alleging "United is a Delaware corporation with its headquarters located at 233 S. Wacker Drive, Chicago, IL 60606"). United is therefore a citizen of the states of Delaware and Illinois. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…"); *3123 SMB LLC v. Horn*, 880 F.3d 461, 462-63 (9th Cir. 2018).

**B.      The Asserted Class Would Include More Than 100 Members**

18. Plaintiff affirmatively asserts in the Complaint that the "Putative Class includes hundreds of students[.]" Exh. 1, at ¶ 329; *see also id.* at ¶ 234 (alleging that, at one point in the class period, there were "500 students waiting for flight time"). A plaintiff's good faith allegations regarding facts supporting jurisdiction are to be accepted as true. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

**C.      The Asserted Class Claims Place More Than $5,000,000 In Controversy.**

19. The Supreme Court has held that, under 28 U.S.C. § 1446(a), "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. Submission of evidence is not required

at removal. *Id.*; *accord Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) ("a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of jurisdictional elements") (citation omitted). When a defendant invokes CAFA as the basis for jurisdiction, the Court should not apply any presumption in favor of remand, as Congress enacted CAFA "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89.

20. Because removal occurs at the outset of litigation, "the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy." *Jauregui v. Roadrunner Transp. Services, Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). Therefore, it is understood that the amount in controversy is not an assessment of defendants' liability, but simply "reflects the *maximum* recovery the plaintiff[s] could reasonably recover" based on their allegations. *Arias*, 936 F.3d at 927. In establishing that CAFA's $5 million threshold is met, the removing party may rely on a "chain of reasoning that includes assumptions" and will meet its burden so long as the "reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).

21. In this case, based on Plaintiffs' allegations, the amount in controversy easily exceeds $5,000,000.

22. Specifically, Plaintiffs allege that the putative class members were damaged because they made tuition payments in reliance on the defendants' alleged misrepresentations. *See, e.g.*, Exh. 1, at ¶ 352. Plaintiffs further allege that those tuition payments ranged from $71,250 to $100,250 per student during the putative class period. *Id.* at ¶ 49. Plaintiffs further allege that the putative class "includes hundreds of students." *Id.* at ¶ 329. But even if the putative class included

only 100 students (rather than the "hundreds" alleged), the amount in controversy would exceed $7 million based on the alleged tuition-based damages alone.

23. Moreover, Plaintiffs allege that in addition to these "direct" damages, the class members "suffered consequential damages in the form of lost economic opportunity." *Id.* at ¶ 321. Plaintiffs also seek punitive damages and attorneys' fees, *id.* at pp. 38-39 (Prayer for Relief), which add to the alleged amount in controversy. *See Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 775 (9th Cir. 2020) (finding CAFA's amount in controversy requirement satisfied based on plaintiffs' claimed entitlement to punitive damages and attorneys' fees).

24. As noted above, United denies that Plaintiffs have stated a claim to relief and denies that Plaintiffs or any putative class members are entitled to damages in connection with the asserted claims. Nonetheless, the analysis set forth above makes clear that Plaintiffs' claims, as alleged, place at least $5,000,000 in controversy.

25. For all the foregoing reasons, United has demonstrated that all prerequisites for CAFA jurisdiction have been met.

26. United reserves the right to supplement these papers.

**WHEREFORE**, Defendant United Airlines hereby removes this action from the Arizona Superior Court in Maricopa County to this Court.


Dated: March 19, 2025

/s/ Bradley L. Dunn
Bradley L. Dunn (AZ Bar No. 028897)
M. Victoria Smith (AZ Bar No. 036334)
HINSHAW & CULBERTSON LLP
2375 East Camelback Road, Suite 410
Phoenix, AZ 85016
(602) 631-4400
bdunn@hinshawlaw.com
msmith@hinshawlaw.com
*Attorney for Defendant United Airlines, Inc.*

7

1
2
3

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 19, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document has been furnished via E-Mail to David K. TeSelle, dteselle@burgsimpson.com, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., 2390 East Camelback Road, Suite 403, Phoenix, AZ 85016, Attorney for Plaintiffs.

Dated: March 19, 2025

/s/ Bradley L. Dunn
Bradley L. Dunn (AZ Bar No. 028897)
M. Victoria Smith (AZ Bar No. 036334)
HINSHAW & CULBERTSON LLP
2375 East Camelback Road, Suite 410
Phoenix, AZ 85016
(602) 631-4400
bdunn@hinshawlaw.com
msmith@hinshawlaw.com
*Attorneys for Defendant United Airlines, Inc.*

# EXHIBIT 9

« Return to search results

## Case Information

| | | | |
|---|---|---|---|
| **Case Number:** | CV2025-006742 | **Judge:** | Julian, Melissa |
| **File Date:** | 2/21/2025 | **Location:** | Downtown |
| **Case Type:** | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Anant Bhattacharya | Plaintiff | Female | DAVID TESELLE |
| Jennifer Bummer | Plaintiff | Female | DAVID TESELLE |
| Kevin Chapa | Plaintiff | Male | DAVID TESELLE |
| Azia Charles | Plaintiff | Female | DAVID TESELLE |
| Shawn Day | Plaintiff | Male | DAVID TESELLE |
| Blake Falls | Plaintiff | Male | DAVID TESELLE |
| Adela Gallegos | Plaintiff | Female | DAVID TESELLE |
| Norbertha Garcia | Plaintiff | Female | DAVID TESELLE |
| Rick Gonzalez | Plaintiff | Male | DAVID TESELLE |
| Chris Hall | Plaintiff | Male | DAVID TESELLE |
| Cameron James | Plaintiff | Male | DAVID TESELLE |
| Lok Sum Ida Lau | Plaintiff | Male | DAVID TESELLE |
| Joshua Lim | Plaintiff | Male | DAVID TESELLE |
| Daniel Madison | Plaintiff | Male | DAVID TESELLE |
| Sawyer Mills | Plaintiff | Male | DAVID TESELLE |
| Young Noh | Plaintiff | Unknown | DAVID TESELLE |
| Emily Pagano | Plaintiff | Female | DAVID TESELLE |
| Jacklyn Pope | Plaintiff | Female | DAVID TESELLE |
| Felicia Ragsdale | Plaintiff | Female | DAVID TESELLE |
| Jackie Taylor | Plaintiff | Female | DAVID TESELLE |
| Paige Texas | Plaintiff | Female | DAVID TESELLE |
| Jenesis Tucker | Plaintiff | Female | DAVID TESELLE |
| Jon Watkins | Plaintiff | Male | DAVID TESELLE |
| Jonathan Wizard | Plaintiff | Male | DAVID TESELLE |
| Westwind School Of Aeronautics Phoenix L L C | Defendant | | Pro Per |
| United Airlines Inc | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 3/4/2025 | AFS - Affidavit Of Service | 3/10/2025 | |
| **NOTE:** | WESTWIND SCHOOL OF AERONAUTICS PHOENIX LLC | | |
| 3/3/2025 | AFS - Affidavit Of Service | 3/6/2025 | |
| **NOTE:** | UNITED AIRLINES INC | | |
| 2/21/2025 | COM - Complaint | 2/24/2025 | |
| **NOTE:** | Complaint | | |
| 2/21/2025 | CSH - Coversheet | 2/24/2025 | |
| **NOTE:** | Civil Cover Sheet | | |
| 2/21/2025 | CCN - Cert Arbitration - Not Subject | 2/24/2025 | |
| **NOTE:** | Certificate Of Compulsory Arbitration - Is Not Subject To | | |
| 2/21/2025 | SUM - Summons | 2/24/2025 | |
| **NOTE:** | Summons | | |
| 2/21/2025 | SUM - Summons | 2/24/2025 | |
| **NOTE:** | Summons | | |

## Case Calendar

**There are no calendar events on file**

## Judgments

| Date | (F)or / (A)gainst | Amount | Frequency | Type | Status |
|---|---|---|---|---|---|
| **No records found.** | | | | | |