David K. TeSelle (#032057)
Joshua B. Abromovitz (#038401)
Patrick M. Sweet (pro hac vice application forthcoming)
Sophia E. Kyziridis (pro hac vice application forthcoming)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
2390 East Camelback Road, Ste. 403
Phoenix, AZ 84016
Telephone: (602) 777-7000
Email: dteselle@burgsimpson.com
         jabromovitz@burgsimpson.com
         psweet@burgsimpson.com
         skyziridis@burgsimpson.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anant Bhattacharya; Jennifer Bummer; Kevin Chapa; Azia Charles; Shawn Day; Blake Falls; Adela Gallegos; Norbertha Garcia; Filipe Ginza; Kana Ginza; Rick Gonzalez; Chris Hall; Cameron James; Lok Sum Ida Lau; Jennifer Lee; Joshua Lim; Daniel Madison; Sawyer Mills; Young Noh; Emily Pagano; Jacklyn Pope; Felicia Ragsdale; Jackie Taylor; Paige Texas; Brianna Tittle; Jenesis Tucker; Jon Watkins; and Jonathan Wizard, | No. CV-25-00923-PHX-SHD_____ |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| Westwind School of Aeronautics Phoenix, LLC d.b.a. United Aviate Academy, a Delaware limited liability company; and United Airlines, Inc., a Delaware corporation, | |
| Defendants. | |

Plaintiffs Anant Bhattacharya, Jennifer Bummer, Kevin Chapa, Azia Charles, Shawn Day,

Blake Falls, Adela Gallegos, Norbertha Garcia, Filipe Ginza, Kana Ginza, Rick Gonzalez, Chris

1  Hall, Cameron James, Lok Sum Ida Lau, Jennifer Lee, Joshua Lim, Daniel Madison, Sawyer

2  Mills, Young Noh, Emily Pagano, Jacklyn Pope, Felicia Ragsdale, Jackie Taylor, Paige Texas,

3  Brianna Tittle, Jenesis Tucker, Jon Watkins, and Jonathan Wizard, by and through undersigned

4  counsel, Burg Simpson Eldredge Hersh & Jardine, P.C., first amended complaint and demand for

5  jury trial against the Defendants, Westwind School of Aeronautics Phoenix, LLC d.b.a. United

6  Aviate Academy and United Airlines, Inc., hereby allege and state as follows:

7  **STATEMENT OF THE CASE**

8  1.     This action seeks to hold Defendants Westwind School of Aeronautics Phoenix,

9  LLC d.b.a. United Aviate Academy ("UAA") and United Airlines, Inc. ("United") accountable

10  for their consumer fraud and deceptive trade practices. With promises of an expedited, one-year

11  flight school program and a pipeline for employment as a commercial airline pilot, Defendants

12  deceived Plaintiffs into enrolling at great expense into UAA. The reality of UAA's program,

13  though, is that it was woefully under resourced and incapable of meeting the grand promises

14  Defendants made to lure these unsuspecting students.

15  **PARTIES**

16  2.     Anant Bhattacharya is an individual who resides in Florida.

17  3.     Jennifer Bummer is an individual who resides in California.

18  4.     Kevin Chapa is an individual who resides in Texas.

19  5.     Azia Charles is an individual who resides in Georgia.

20  6.     Shawn Day is an individual who resides in Arizona.

21  7.     Blake Falls is an individual who resides in Arizona.

22  8.     Adela Gallegos is an individual who resides in New Mexico.

23  9.     Norbertha Garcia is an individual who resides in Arizona.

24  10.    Filipe Ginza is an individual who resides in Arizona.

11.     Kana Ginza is an individual who resides in Arizona.

12.     Rick Gonzalez is an individual who resides in Illinois.

13.     Chris Hall is an individual who resides in Colorado.

14.     Cameron James is an individual who resides in Colorado.

15.     Lok Sum Ida Lau is an individual who resides in Connecticut.

16.     Jennifer Lee is an individual who resides in California.

17.     Joshua Lim is an individual who resides in Texas.

18.     Daniel Madison is an individual who resides in Arizona.

19.     Sawyer Mills is an individual who resides in Virginia.

20.     Young Noh is an individual who resides in Texas.

21.     Emily Pagano is an individual who resides in Arizona.

22.     Jacklyn Pope is an individual who resides in Arizona.

23.     Felicia Ragsdale is an individual who resides in Nevada.

24.     Jackie Taylor is an individual who resides in California.

25.     Paige Texas is an individual who resides in Florida.

26.     Brianna Tittle is an individual who resides in Arizona.

27.     Jenesis Tucker is an individual who resides in Texas.

28.     Jon Watkins is individual who resides in Arizona.

29.     Jonathan Wizard is an individual who resides in California.

30.     UAA is a Delaware limited liability company with its principal place of business per the Arizona Secretary of State located at 732 W. Deer Valley Road, Phoenix, AZ 85027. It is authorized to do business in the state of Arizona and may be served through its registered agent, CT Corporation System, 3800 North Central Avenue, Ste. 460, Phoenix, AZ 85012.

31.     United is a Delaware corporation with its headquarters located at 233 S. Wacker

Drive, Chicago, IL 60606. It is authorized to do business in the state of Arizona and may be served through its registered agent, Corporation Service Company, 8825 N. 23rd Ave., Ste. 100, Phoenix, AZ 85021.

## JURISDICTION AND VENUE

32.     The Maricopa County, Arizona Superior Court has subject matter jurisdiction over this action and the amount of damages sought by the Plaintiffs exceeds the minimum jurisdictional amount established for filing in the Maricopa County, Arizona Superior Court.

33.     The state and federal courts of Arizona have personal jurisdiction over Defendants in this action because it arises out of Defendants' acts of consumer fraud occurring in the state of Arizona and/or concerning services that are the subject of this action that were to be provided in Arizona, specifically flight school education at UAA's facility in Maricopa County.

34.     Not only is United the owner of UAA—benefiting from the actions of UAA in Arizona—and made misrepresentations at issue in this case in Arizona, but it directed its marketing communications towards Plaintiffs and others with the purpose of inducing them to attend UAA in Arizona.

35.     The state and federal courts of Arizona have general jurisdiction over UAA because it's principal place of business is located in Arizona.

36.     Venue is proper in Maricopa County, Arizona because the conduct complained of in and/or the services that are the subject of this action took place in Maricopa County.

37.     Pursuant to Ariz. R. Civ. P. 8(b)(2), Plaintiffs state that this action qualifies for Tier 3 discovery as set forth in Ariz. R. Civ. P. 26.2.

## GENERAL ALLEGATIONS

**A.  United purchases UAA and begins advertising a one-year flight school program that would enable students to begin careers as commercial airline pilots.**

38.     United launched in 2019 its "United Aviate" career development program, intending

1    to fill a need for thousands of new pilots over roughly the next decade.

2       39.    As part of growing its career development program, United purchased the Westwind

3    School of Aeronautics Phoenix, LLC, and rebranded it as UAA. The airline signed the purchase

4    agreement on February 5, 2020.

5       40.    United purchased the school, in part, to give the airline more visibility and direction

6    over the recruitment, development, and training of future pilots.

7       41.    Upon information and belief, Westwind School of Aeronautics Phoenix, LLC, made

8    representations to United Airlines that the flight school the carrier was purchasing had the

9    resources to train hundreds of pilots per year.

10      42.    From the time of United's purchase to August of 2023, Dana Donati was the CEO

11   of UAA.

12      43.    Upon information and belief, Ms. Donati made representations to United about

13   UAA's ability to graduate certain students.

14      44.    Upon information and belief, to fulfill the promises she made to United, Ms. Donati

15   personally intervened in the scheduling process for certain students to ensure those students

16   progressed quicker, despite the effect it had on other students.

17      45.    United sought to graduate at least 300 students in UAA's first year.

18      46.    UAA and United represented to potential students, including Plaintiffs, that UAA

19   provided an intensive program to obtain the FAA certifications necessary to become a commercial

20   pilot in one year.

21      47.    Defendants' representations were pervasive; including those made on UAA's

22   website, websites United maintained such as unitedaviate.com, in emails to prospective students,

23   and other marketing materials and campaigns about the flight school.

24

48. The United Aviate website, shown below, represented that students would be able to complete the program within 12 months. The promise that a student could complete the program and be hired as a pilot within one year was central to the Defendants' entire plan to entice new students to UAA.

49. Defendants made these representations knowing and/or with reason to know that they did not have the necessary resources to accommodate and graduate within one year the students they intended to enroll and/or did enroll and from whom they accepted payments. As time went on, Defendants continued to make the same representations to new students despite knowing the representations were false.

50. Defendants' representations were about fundamental characteristics of the service—education to become a commercial pilot—being offered.

51. In particular, UAA and United initially represented to students that the program would have the following durations to obtain FAA certifications:

     a.  Private Pilot Training ("PPL"): 2 months;

     b.  Instrument Rating: 2 months;

     c.  Commercial Single-engine ("CSE"): 3 months;

     d.  Certified Flight Instructor ("CFI"): 2 months;

     e.  Certified Flight Instructor (Instrument) ("CFII"): 1 month;

     f.  Commercial Multi-engine ("CME"): 1 month; and

     g.  Multi-engine Flight Instructor ("MEI"): 1 month.

52.    UAA charged students tuition between $71,250 and $100,250 between 2021 and 2024.

53.    UAA mapped out for students the following tuition schedule that had them obtaining all program certificates in 12 months:

| Training Month | Training Certificate | Room & Board | Scholarship Schedule | Loan Disbursement Schedule | Student Self Pay Schedule |
|---|---|---|---|---|---|
| 1 | Private | $1,250 | | 2 Months of Living Expenses | $5,937.50 |
| 2 | Private | $1,250 | | | $5,937.50 |
| 3 | Instrument | $1,250 | 35,625.00 | $35,625 + 4 Months Living Expenses | $5,937.50 |
| 4 | Instrument | $1,250 | | | $5,937.50 |
| 5 | Commercial SEL | $1,250 | | | $5,937.50 |
| 6 | Commercial SEL | $1,250 | | | $5,937.50 |
| 7 | Commercial SEL | $1,250 | 35,625.00 | $35,625 + 6 Months Living Expenses | $5,937.50 |
| 8 | Commercial SEL | $1,250 | | | $5,937.50 |
| 9 | Commercial MEL | $1,250 | | | $5,937.50 |
| 10 | CFI | $1,250 | | | $5,937.50 |
| 11 | CFI | $1,250 | | | $5,937.50 |
| 12 | CFII & MEI | $1,250 | | | $5,937.50 |
| Total | | $1,500 | $71,250 | $71,250 + 12 Months Living Expenses | $71,250 |

54.    Students were also responsible for fees and costs associated with books, knowledge exams, and check rides estimated to cost roughly $10,000.

55.    UAA and United partnered with ZuntaFi, Sallie Mae and Liberty Bank to provide

1  student loans to cover tuition, fees, and costs, including living expenses.

2      56.    UAA and United also partnered with JPMorgan Chase to fund scholarships for some

3  students. The scholarships were awarded through the following Professional Pilot Groups: Latino

4  Pilots Association, National Gay Pilots Association, Organization of Black Aerospace

5  Professionals, Professional Asian Pilots Association, Sisters of the Skies, and Women in Aviation

6  International.

7      57.    The majority of students, including most of Plaintiffs, were forced to take out

8  student loans to attend the UAA program.

9      58.    Those students agreed to take out loans with the expectation that they were going to

10  attend a one-year program.

11      59.    Students agreed to take out loans with the expectation that they would be able to

12  obtain gainful employment with a commercial airline following the program and pay off the loans

13  over time.

14      60.    For many students who relied on student loans, such student loans were for

15  $100,000 or more.

16      61.    The inaugural class progressed through the private pilot license portion of the

17  program and things appeared to run smoothly.

18      62.    As UAA added more and more students each month, however, students began

19  seeing reductions in their ability to acquire flight time.

20      63.    Students also began seeing substantial turnover in instructors, leading to frequent

21  reassignments and rescheduling.

22      64.    Even after the flight time and instructor issues made clear to Defendants that they

23  could not meet the one-year deadline represented to the general public on its website and in its

24  marketing, Defendants continued to make these representations to new potential consumer

students.

65.    UAA also made representations to Plaintiffs that the school was working to improve processes and reiterated commitments to progress students through the program.

66.    In one instance, UAA held a "graduation ceremony" showing how many students were through the program and even invited press. In reality, though, the "ceremony" was a PR stunt as many of the students were not actually finished with the program.

67.    In the spring of 2024, students began learning that the issues at UAA were not one-off lapses but were instead evidence of UAA and United's misrepresentations as to the length and quality of the UAA program.

68.    UAA was accredited by the Accrediting Commission of Career Schools and Colleges ("ACCSC").

69.    In May of 2024, the ACCSC issued a warning to UAA for failing to comply with accreditation standards.

70.    ACCSC issued the warning, in part, because UAA failed to maintain enrollment at or below 325 students, a cap intended to ensure sufficient resources for students.

71.    Instead of complying with the enrollment cap, UAA *added* students, going from 338 students to 382 in March of 2024.

72.    ACCSC issued the warning, in part, because UAA failed to demonstrate it was financially sound and had the resources to meet student needs.

73.    Beginning around the time of the ACCSC warning letter, UAA began a campaign to expel students, targeting students who were delayed in completing the program and giving a variety of reasons to justify the expulsion.

74.    In August of 2024, ACCSC placed UAA on probation after the school failed to adequately address the commission's prior concerns, including the issues highlighted in the May

2024 warning letter.

75.    Ultimately, instead of complying with the ACCSC accreditation standards, UAA voluntarily withdrew effective January 15, 2025.

**B.  Defendants deceive Anant Bhattacharya into attending UAA and break their promises.**

76.    Anant Bhattacharya began with UAA in August of 2024.

77.    Ms. Bhattacharya relocated to Arizona to attend UAA.

78.    She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

79.    Moreover, she was swayed to join the program by its representations that the program was open to everyone, no matter the person's race/religion/gender identity/sexual orientation.

80.    UAA and United made these representations to Ms. Bhattacharya through their websites, through social media, and through emails.

81.    After joining the program, Ms. Bhattacharya learned it was not as advertised.

82.    She was assigned multiple different instructors and administrators over a short period of time, and a frequently changing schedule that precluded her from getting consistent instruction.

83.    Moreover, Defendants' representations about inclusion and diversity were false. A transgender woman, Ms. Bhattacharya was told UAA could not offer her housing. UAA later offered to place Ms. Bhattacharya in the male dorms, but Ms. Bhattacharya was not comfortable with that option and declined.

84.    In addition to tuition, Ms. Bhattacharya incurred tens of thousands of dollars in expenses in order to attend the program.

85.    Ultimately, UAA expelled[1] Ms. Bhattacharya from the program in November of 2024, citing a lack of progress towards completing the private pilot license segment of the program but without considering the lack of consistent instruction.

**C.** **Defendants deceive Jennifer Bummer into attending UAA and break their promises.**

86.    Jennifer Bummer began with UAA in March of 2023.

87.    Ms. Bummer was a small business owner who ran a yoga studio in San Diego before relocating to Arizona to attend UAA. The studio ultimately suffered financially due to Ms. Bummer's extended absence due to delays in the UAA program.

88.    She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

89.    She was also impressed with the school's affiliation with United.

90.    UAA and United made these representations to Ms. Bummer through their website and a commercial that aired between December and January of 2023 in San Diego.

91.    Ms. Bummer was a student until May of 2024, when UAA expelled her from the program.

92.    Ms. Bummer's expulsion came after she expressed concern to UAA about not being able to complete the program in one year and that she was racking up expenses.

93.    Before her expulsion, Ms. Bummer maintained a good status as a student, having never been directed to undergo remedial training.

94.    Ms. Bummer, as a result of UAA and United's misrepresentations, was forced to incur tens of thousands of dollars in expenses and tuition. Defendants' misrepresentations left Ms. Bummer with more than $100,000 in debt.

---

[1] UAA uses the euphemism "offboarded" to describe students it expels.

**D. Defendants deceive Kevin Chapa into attending UAA and break their promises.**

95. Kevin Chapa began with UAA in December of 2023.

96. Mr. Chapa relocated to Arizona to attend UAA.

97. He joined the program based on UAA and United's representations through email communications from UAA, speaking with a UAA representative, visiting the school itself, and through UAA's website and marketing materials.

98. After joining the program, Mr. Chapa learned it was not as advertised.

99. He did not finish the program due to the school's inefficient teaching methods; the school frequently changed his instructors, precluding him from getting consistent instruction.

100. Because of the insufficient resources at the flight school, it took Mr. Chapa nearly a month to get another flight instructor to teach him.

101. Mr. Chapa, as a result of UAA and United's misrepresentations, was forced to incur tens of thousands of dollars in expenses and tuition.

102. Mr. Chapa left the program in December 2024.

**E. Defendants deceive Azia Charles into attending UAA and break their promises.**

103. Azia Charles began with UAA in March 2022.

104. Ms. Charles decided to relocate to Arizona to attend UAA because of her love for aviation and was eager for the opportunity to become a pilot.

105. She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

106. Additionally, she was swayed to join the program by its representations that the program was geared toward diversity, equity, and inclusion, no matter the person's background, ethnicity, or gender.

107. UAA and United made these representations to Ms. Charles through statements through their websites, social media, and emails.

108.    After joining the program, Ms. Charles learned it was not as advertised.

109.    She was assigned multiple different instructors over a short period of time, and each instructor taught differently.

110.    Also, due to the lack of available aircrafts for training, she would go weeks without meeting with an instructor or flying.

111.    In addition to tuition, Ms. Charles incurred thousands of dollars in expenses in order to attend the program.

112.    Ultimately, UAA expelled Ms. Charles from the program in September of 2022, citing that she was taking too long to advance and that it looked bad for the program but without considering the lack of aircrafts and instructors available for consistent instruction.

**F.  Defendants deceive Shawn Day into attending UAA and break their promises.**

113.    Shawn Day began with UAA in October of 2023.

114.    Mr. Day resigned from employment of 21 years in Fort Worth, Texas to relocate to Arizona to attend UAA so that he could pursue his dream of becoming a commercial airline pilot while his husband stayed behind at their home in Texas.

115.     Mr. Day did his due diligence and research by touring other flight schools, reaching out to people on Facebook regarding UAA, and even did an informal tour of the school.

116.    Although he had been accepted at and been approved for financial at another school in Texas, Mr. Day joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

117.    He also joined the program because of the diversity on campus, and was impressed with the advertised culture.

118.    UAA and United made these representations to Mr. Day through their website, social media, emails, and other marketing and advertising mechanisms.

119.    In addition to tuition, Mr. Day incurred tens of thousands of dollars in expenses in

order to attend the program.

120.    In his first couple months in the program, he was flying 3-4 times a week or was in the simulator (barring weather or mechanical issues), and was scheduled regularly.

121.    When Mr. Day's flight instructor became no longer available, he no longer received consistent instruction.

122.    Due to UAA and United's lack of resources he was precluded from receiving consistent instruction and was therefore put into a remedial program.

123.    Ultimately, UAA expelled Mr. Day from the program in May of 2024, citing that he was taking too long to advance but without considering the lack of instructors available for consistent instruction.

**G. Defendants deceive Blake Falls into attending UAA and break their promises.**

124.    Blake Falls began with UAA in August 2022.

125.    Mr. Falls relocated to Arizona to attend UAA. After being told there would be a dorm room available, Mr. Falls arrived in Arizona and was told he would need to relocate off campus and incur additional expenses due to a new reassignment of rooms.

126.    He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

127.    UAA and United made these representations through their website and through emails listing out timelines.

128.    After joining the program, Mr. Falls learned it was not as advertised.

129.    Mr. Falls completed private training in around 3 months, but UAA did not schedule him for the checkride to test out of private pilot training until 13 months into the program.

130.    Mr. Falls could not timely advance through the program due to (a) not being scheduled for flights, (b) maintenance issues limiting available aircraft, (c) and a lack of available instructors. All the while, UAA continued to add additional students.

131.    During several months, Mr. Falls would only be able to fly once or twice.

132.    When Mr. Falls began training for his instrument rating, it took three weeks to schedule his first flight.

133.    While training for his instrument rating, Mr. Falls was repeatedly reassigned instructors.

134.    In addition to tuition, Mr. Falls incurred tens of thousands of dollars in expenses in order to attend the program.

135.    Ultimately, UAA expelled Mr. Falls from the program in April of 2024, citing that he was taking too long to advance but without considering the lack of resources available for consistent instruction.

136.    After expelling Mr. Falls, UAA requested that Mr. Falls remain in the United Aviate career program to work for United after going to school somewhere else.

**H. Defendants deceive Adela Gallegos into attending UAA and break their promises.**

137.    Adela Gallegos began with UAA in December 2021.

138.    Ms. Gallegos relocated to Arizona to attend UAA.

139.    She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

140.    Moreover, she was swayed to join the program by UAA and United's representations that this was the fastest way to become a commercial pilot.

141.    Ms. Gallegos was in the inaugural class and was told that she would finish in 8-12 months.

142.    She was still in the program two years later.

143.    In July 2023, Ms. Gallegos was still a student, but became a certified flight instructor.

144.    Between July 2023 and February 2024, she was working as a flight instructor and

was also a student in the program.

145.    As a flight instructor, Ms. Gallegos noticed that the students were not progressing through the program due to the lack of resources available.

146.    Students in the program would not receive enough flight time to complete the program due to the lack of instructors and aircrafts.

147.    UAA continued to take more students each month regardless of their failure to adequately provide sufficient resources for the students it already had.

148.    Ms. Gallegos was an instructor, working effectively on-call seven days per week.

149.    She was overworked because of the lack of instructors, which made it difficult to complete the program as a student.

150.    She voiced her concerns regarding the program to the administrative department at UAA but was essentially ignored.

151.    In addition to tuition, Ms. Gallegos incurred tens of thousands of dollars in expenses in order to attend the program.

152.    Ms. Gallegos did not complete the program and left UAA in February of 2024.

**I.    <u>Defendants deceive Norbertha Garcia into attending UAA and break their promises.</u>**

153.    Norbertha Garcia began with UAA in October of 2022.

154.    Ms. Garcia relocated to Arizona to attend UAA.

155.    She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

156.    UAA and United made these representations to Ms. Garcia through various marketing and advertising mechanisms.

157.    After joining the program, Ms. Garcia learned it was not as advertised.

158.    There were not enough aircrafts which precluded her from getting consistent instruction.

159.    Additionally, while a student at UAA, an instructor grabbed her iPad out of her hands and slammed it against the simulator, frightening her.

160.    Ms. Garcia voiced her concerns regarding "injustices," including to a mentor.

161.    Ms. Garcia was the Latino Pilots Association Chapter Founder and President on campus.

162.    During her time at UAA, a student action group was founded at UAA, due to students needing to be able to speak up and not face retaliation.

163.    In addition to tuition, Ms. Garcia incurred tens of thousands of dollars in expenses in order to attend the program.

164.    Ultimately, in June 2023, UAA terminated Ms. Garcia's enrollment in the program without providing any further explanation for the decision.

**J.    Defendants deceive Filipe and Kana Ginza into attending UAA and break their promises.**

165.    Filipe and Kana Ginza—husband and wife—began with UAA in December 2021.

166.    They relocated to Arizona from Chicago to attend the program.

167.    Before joining UAA, each of the couple worked as a flight attendant for United where the airline advertised its United Aviate program and the UAA school in particular.

168.    In particular, Filipe and Kana Ginza were swayed by United and UAA's promises, made through marketing emails, social media, website content, and UAA representatives, that the program would put them on the career path to become commercial pilots and achieve all of the necessary ratings and certifications in 1 year.

169.    The couple's path through the program included substantial delays due to lack of flight time, unavailability of aircraft, inconsistent availability of instructors and the school's favoring and prioritization of chosen students.

170.    Despite the challenges, Filipe and Kana Ginza both finished the program, albeit long

after the promised duration of one year. Filipe Ginza finished in January 2024 and Kana Ginza finished in July 2023.

171.    As a result of delays, the couple incurred substantial additional costs and expenses and were set back years of career development.

172.    Additionally, the couple were promised that their status of taking a "leave of absence" from United to attend the program would ensure that they retained their benefits when they returned to work for United as the United Aviate program was sold to them. After the substantial delay to complete the program, though, both were told they no longer retained their benefits.

**K. Defendants deceive Rick Gonzalez into attending UAA and break their promises.**

173.    Rick Gonzalez began with UAA in January of 2022.

174.    He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

175.    Moreover, he was swayed to join the program by UAA and United's representations that this was the fastest way to become a pilot at United Airlines.

176.    UAA and United made these representations to Mr. Gonzalez through various marketing and advertising mechanisms.

177.    After joining the program, Mr. Gonzalez learned it was not as advertised.

178.    He also noticed that at some point, UAA and United changed the representations on their website from the "most fast way to United" to the "most secure way to United."

179.    Due to the shortage of instructors and aircrafts, students in the program would not receive enough flight time to complete the program in one year, if at all.

180.    Mr. Gonzalez became an instructor at UAA and was essentially required to teach at the associated LET flight school.

181.    In addition to tuition, Mr. Gonzalez incurred tens of thousands of dollars in expenses

in order to attend the program.

182.    Ultimately, Mr. Gonzalez completed the program in June of 2023 and left his position as a flight instructor there in December 2024.

**L.  Defendants deceive Chris Hall into attending UAA and break their promises.**

183.    Chris Hall began with UAA in February of 2022.

184.    Mr. Hall relocated to Arizona to attend UAA.

185.    He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot, that he would have all seven ratings and certificates, and that it was a direct path to working as a pilot for United Airlines.

186.    UAA and United made these representations to Mr. Hall through their website and through emails.

187.    After joining the program, Mr. Hall learned it was not as advertised.

188.    There were instructor and aircraft shortages, and too many students enrolled in the program which caused significant delays.

189.    UAA and United continued urging students to join the program, and UAA continued to add new students, despite the lack of resources necessary to accommodate existing students.

190.    Mr. Hall was a student until February of 2023, when UAA expelled him from the program.

191.    In addition to tuition, Mr. Hall incurred tens of thousands of dollars in expenses in order to attend the program.

**M. Defendants deceive Cameron James into attending UAA and break their promises.**

192.    Cameron James began with UAA in October of 2023.

193.    Mr. James sold his home and uprooted his life to relocate to Arizona to attend UAA.

194.    He joined the program based on UAA and United's representations about the program through email communications, and other marking and advertising mechanisms.

195.    Mr. James was already in United's Aviate career program, which was separate from UAA.

196.    Through the Aviate program, he heard about UAA and had high hopes for the program.

197.    Towards the end of his instrument rating, his primary instructor left the school, and it took almost two months for him to get a new instructor.

198.    UAA failed to provide adequate and accredited instructors for its students.

199.    Students who were without an assigned instructor, waiting on an instructor, or had an instructor that was busy or with limited availability had little to no access to simulators or flight time.

200.    Of concern, students in the program were sometimes evaluated by instructors who were not pilots themselves.

201.    Additionally, there was a lack of uniformity and standardization between the instructors at UAA which created confusion and delays.

202.    In addition to tuition, Mr. James incurred tens of thousands of dollars in expenses in order to attend the program.

203.    Ultimately, UAA expelled Mr. James from the program in June of 2024.

204.    Upon information and belief, UAA was expelling students from the program because of its internal issues in running the academy.

**N. Defendants deceive Lok Sum Ida Lau into attending UAA and break their promises.**

205.    Lok Sum Ida Lau began with UAA in September of 2022.

206.    Ms. Lau relocated to Arizona to attend UAA.

207.    She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot and would be hired upon completion of the course.

208.    UAA and United made these representations to Ms. Lau through their website.

209.    In addition to tuition, Ms. Lau incurred tens of thousands of dollars in expenses in order to attend the program.

210.    She was assigned to multiple different instructors over a short period of time, and there were not enough aircrafts which precluded her from getting consistent instruction.

211.    Ms. Lau did not complete the program because UAA eventually slowly stopped training her and failed to provide the necessary flight time in order to complete the program.

**O. Defendants deceive Jennifer Lee in attending UAA and break their promises.**

212.    Jennifer Lee began with UAA in December of 2023.

213.    She relocated from California to attend the program.

214.    Ms. Lee joined the program based on Defendants' representations—made on Defendants' websites, in emails, and through social media—that it was a one-year program and that Defendants were committed to training the students.

215.    In particular, Ms. Lee saw social media posts showing a graduation ceremony and lauding the career potential for folks who finished the program. Ms. Lee later learned that the "graduation ceremony" was a ruse; a substantial number of the "graduates" had not actually graduated.

216.    After accepting her tuition payments and causing Ms. Lee to incur thousands of dollars in costs and expenses, UAA failed to deliver on its promises.

217.    Ms. Lee had limited access to instructors and flight time. When she did get time with instructors, they were inconsistent in what they taught her to do. The lack of resources and organization effectively made it a "self study" program.

218.    Ultimately, Ms. Lee was expelled from the program in July of 2024 with many others in order to comply with the enrollment cap of UAA's accrediting body.

**P.  Defendants deceive Joshua Lim into attending UAA and break their promises.**

219.    Joshua Lim began with UAA in October of 2023.

220.    Mr. Lim relocated to Arizona to attend UAA.

221.    In addition to tuition, Mr. Lim incurred tens of thousands of dollars in expenses in order to attend the program.

222.    He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

223.    Moreover, he joined the program because he always wanted to be a pilot. He first started training in 2019, but financially it was very difficult. Once he heard about UAA, he thought it would be a good opportunity.

224.    UAA and United made these representations to Mr. Lim through their website.

225.    Upon information and belief, there was only one person working to communicate with all the potential students, she later resigned from UAA.

226.    Mr. Lim had significant gaps in his training due to the lack of resources at the school.

227.    UAA failed to provide enough flight instructors and aircrafts for students to progress through the program as advertised.

228.    Ultimately, UAA expelled Mr. Lim from the program in May of 2024 at the end of his private license training, citing a failure of certain requirements but without considering the lack of consistent instruction and flight time.

229.    Prior to being expelled, Mr. Lim, four other instructors, and some fellow students advocated for him to stay in the program, UAA denied his request.

**Q.  Defendants deceive Daniel Madison into attending UAA and break their promises.**

230.    Daniel Madison began with UAA in December of 2021.

231.    He joined the program based on UAA and United's representation that it would be a fast-track program.

232.    Defendants told him the program at UAA would take 12 months.

233.    After graduating from UAA in 12 months, United told him he would spend another 12 months as an instructor before working at the regional airlines to get to 1,500 hours building jet time. When that jet time was accrued, he'd then receive a position at United Airlines as a commercial pilot.

234.    UAA and United made these representations to Mr. Madison through their website and once he started the program.

235.    Initially, there were not too many students, enough aircrafts, and enough instructors.

236.    Mr. Madison was one of the first students to complete the private pilot license portion of the training.

237.    However, UAA was very disorganized, and continued to admit students into the program which created a lack of consistent instruction, a lack of flight time, and a lack of aircrafts for the students to use.

238.    In February of 2022, Mr. Madison was required to "reinterview" for UAA in order to continue with the program.

239.    He was the only student to fail the interview and was expelled in February 2022 for two months.

240.    After fellow students appealed on his behalf, UAA reinterviewed Mr. Madison and reinstated him around April 2022.

241.    Following his reinstatement, Mr. Madison was hired to work at UAA as an instructor around June 2023 while he continued as a student.

242.    UAA continued to enroll hundreds of students without hiring additional instructors.

243.    Because of this, UAA hired students who completed their CFI to become instructors.

244.    In addition to tuition, Mr. Madison incurred tens of thousands of dollars in expenses in order to attend the program.

245.    Ultimately, Mr. Madison did not complete the program and quit as an instructor at UAA.

**R.  Defendants deceive Sawyer Mills into attending UAA and break their promises.**

246.    Sawyer Mills began with UAA in December of 2021.

247.    Mr. Mills relocated to Arizona to attend UAA.

248.    In addition to tuition, Mr. Mills incurred tens of thousands of dollars in expenses in order to attend the program.

249.    He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

250.    UAA and United made these representations to Mr. Mills through social media, and email communications.

251.    Mr. Mills also subscribed to the UAA newsletter and received many email blasts about the program which influenced his decision to attend.

252.    After joining the program, Mr. Mills learned it was not as advertised.

253.    There was a lack of resources available for the students which precluded him from getting consistent instruction.

254.    There were approximately 20 aircrafts and 500 students waiting for flight time. Mr. Mills would sometimes wait weeks before he could get instruction.

255.    In two years, Mr. Mills only received approximately 300 hours of flight time.

256.    Ultimately, Mr. Mills resigned from the program in August of 2023 due to delays in his training and cost.

**S.  Defendants deceive Young Noh into attending UAA and break their promises.**

257.    Young Noh began with UAA in November of 2023.

258.  Mr. Noh relocated to Arizona to attend UAA.

259.  He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot, with students also earning ratings in CFI, CFII, ME, and MEI.

260.  UAA and United made these representations to Mr. Noh through its website and other marketing and advertising mechanisms.

261.  After joining the program, Mr. Noh learned it was not as advertised.

262.  During the first six weeks, Mr. Noh flew 3-4 times per week and successfully completed 60 percent of the private pilot course. Beginning in the seventh week, Mr. Noh's ability to fly was substantially pared back, dropping to an average of only once per week.

263.  Mr. Noh experienced this lack of flight time due to the unavailability of instructors and poor scheduling and administration.

264.  In addition to tuition, Mr. Noh incurred tens of thousands of dollars in expenses in order to attend the program.

265.  Ultimately, Mr. Noh was expelled from the program and was told that he should take ownership for his failure without considering UAA's failure to provide enough instructors and aircrafts.

**T.  Defendants deceive Emily Pagano into attending UAA and break their promises.**

266.  Emily Pagano began with UAA in March of 2022.

267.  She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

268.  UAA and United made these representations to Ms. Pagano through their social media, through marketing and advertising mechanisms, and through commercials on aircrafts.

269.  More than 2.5 years after enrolling at UAA, in October of 2024 Ms. Pagano completed the program.

270.    In November 2024, Ms. Pagano was given a position at UAA but is rarely given the opportunity to fly.

271.    Because UAA did not have enough instructors and aircrafts to properly train its students, Ms. Pagano struggled to get consistent instruction.

272.    Upon information and belief, the school is struggling due to accreditation issues.

273.    In addition to tuition, Ms. Pagano incurred tens of thousands of dollars in expenses in order to attend the program.

**U.  Defendants deceive Jacklyn Pope into attending UAA and break their promises.**

274.    Jacklyn Pope began with UAA in December of 2021.

275.    Ms. Pope relocated from North Carolina to Arizona to attend UAA.

276.    She joined the program based on UAA and United's representation that it would be a one-year program providing a path to becoming a commercial pilot. Defendants represented to her that the program would provide a path to a First Officers seat as a rated Commercial Airline Transportation Pilot.

277.    Moreover, she was swayed to join the program by Defendants' representations that the program was open to everyone, no matter the person's race/religion/gender identity/sexual orientation or whether they had prior knowledge or experience in general aviation.

278.    UAA and United made these representations to Ms. Pope through their websites, through emails, in virtual meetings with sponsored aviation organizations, and through other marketing and advertising mechanisms.

279.    After joining the program, Ms. Pope learned it was not as advertised.

280.    She was assigned multiple instructors, had gaps in her flights, and had very limited flight time, which precluded her from getting consistent instruction.

281.    Despite advertising that students would get opportunities to fly five times per week, UAA did not give Ms. Pope such opportunities. Moreover, the school prioritized some students

over others, including Ms. Pope, for flight time.

282.    UAA continued to enroll students even though they lacked resources for the ones they already had in the program.

283.    In addition to tuition, Ms. Pope incurred tens of thousands of dollars in expenses in order to attend the program.

284.    Ms. Pope was expelled from the program in May of 2024 after being in the program for more than 2.5 years.

**V.  Defendants deceive Felicia Ragsdale into attending UAA and break their promises.**

285.    Felicia Ragsdale began with UAA in October of 2022.

286.    Ms. Ragsdale relocated to Arizona to attend UAA.

287.    She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

288.    Moreover, she was swayed to join the program by its representations that students in the program would be prioritized in the selection process to become a commercial pilot for United.

289.    UAA and United made these representations to Ms. Ragsdale through social media and other marketing and advertising mechanisms.

290.    After joining the program, Ms. Ragsdale learned it was not as advertised.

291.    She was assigned six different instructors over a short period of time, and a frequently changing schedule that prevented her from getting consistent instruction.

292.    In addition to tuition, Ms. Ragsdale incurred tens of thousands of dollars in expenses in order to attend the program.

293.    Ultimately, UAA expelled Ms. Ragsdale from the program in February of 2023, citing situational awareness and that she was not performing at the standard required for the number of hours flown but without considering the lack of consistent instruction.

**W. Defendants deceive Jackie Taylor into attending UAA and break their promises.**

294.   Jackie Taylor began with UAA in October of 2023.

295.   Ms. Taylor relocated to Arizona to attend UAA.

296.   She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

297.   Moreover, she was swayed to join the program by its commitment to diversity and women in aviation.

298.   UAA and United made these representations to Ms. Taylor through their websites, and through various marketing and advertising mechanisms.

299.   After joining the program, Ms. Taylor learned it was not as advertised.

300.   She was not provided the training to fly consistently, as promised, which caused gaps in her training and precluded her from getting consistent flight time and proper instruction.

301.   In addition to tuition, Ms. Taylor incurred tens of thousands of dollars in expenses in order to attend the program.

302.   Ultimately, Ms. Taylor resigned from the program in May 2024, because of a lack of progress due to a lack of consistent instruction.

**X. Defendants deceive Paige Texas into attending UAA and break their promises.**

303.   Page Texas began with UAA in March of 2023.

304.   Ms. Texas relocated to Arizona to attend UAA.

305.   She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

306.   Additionally, she was swayed to join the program by its representation that they had the best technology for training pilots.

307.   UAA and United made these representations to Ms. Texas through their websites, through emails, and through other various marketing or advertising mechanisms.

308.    After joining the program, Ms. Texas learned it was not as advertised.

309.    Over the course of her time in the program, she had more than 13 different instructors which precluded her from getting consistent instruction.

310.    Ms. Texas voiced her concerns regarding the program to the administrative department at UAA but was essentially ignored.

311.    In addition to tuition, Ms. Texas incurred tens of thousands of dollars in expenses in order to attend the program.

312.    Ultimately, Ms. Texas did not complete the program.

**Y. Defendants deceive Brianna Tittle into attending UAA and break their promises.**

313.    Brianna Tittle began with UAA in March of 2024.

314.    She relocated from Alaska to join the program.

315.    She joined the program based on UAA and United's representations that it would be a one-year program and a pathway to becoming a commercial pilot. Defendants' also made representations about their commitments to educating women.

316.    UAA and United made the representations through their websites and through a TV advertisement noting the program was a pipeline to a career with United Airlines.

317.    The intensive, one-year program Ms. Tittle was promised when she signed up, though, was not what she received.

318.    Instead, the program was disorganized and lacked the capability to educate the students in the promised timeframe.

319.    For example, Ms. Tittle had four different instructors for her first four flights; five different by the time she got to her seventh lesson. When she was assigned another instructor for her eighth lesson, he was a brand-new CFI who had just obtained that certification from UAA and was also trying to progress through the remainder of his program. It was students teaching students.

320.    UAA expelled Ms. Tittle six months after she began and when she was on lesson 35 of 36 to obtain the private pilot license.

**Z.  Defendants deceive Jenesis Tucker into attending UAA and break their promises.**

321.    Jenesis Tucker began with UAA in January of 2023.

322.    Ms. Tucker relocated to Arizona to attend UAA.

323.    She joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

324.    Moreover, she was swayed to join the program based on UAA's affiliation with United Airlines.

325.    Ms. Tucker had a life-long career goal of becoming a pilot and was eager to begin her career as a commercial pilot.

326.    UAA and United made these representations to Ms. Tucker through their website and through emails.

327.    After joining the program, Ms. Tucker learned it was not as advertised.

328.    Ms. Tucker continually would not get responses from her instructors, which prevented her from getting consistent instruction.

329.    Due to the lack of communication by the instructors, Ms. Tucker would go weeks without flight training and would fall behind.

330.    Because of the lack of consistency in training, lack of aircrafts and lack of instructors, she was precluded from progressing through the program as expected.

331.    In addition to tuition, Ms. Tucker incurred tens of thousands of dollars in expenses in order to attend the program.

332.    Ultimately, UAA expelled Ms. Tucker in May of 2024 during her last lesson for her instrument rating.

**AA.**   <u>Defendants deceive Jon Watkins into attending UAA and break their promises.</u>

333.   Jon Watkins began with UAA in September of 2022.

334.   In addition to tuition, Mr. Watkins incurred tens of thousands of dollars in expenses in order to attend the program.

335.   He joined the program based on UAA and United's representations that it would be a one-year program providing a path to becoming a commercial pilot.

336.   UAA made these representations to Mr. Watkins through their websites, and through speaking with a United Aviate representative.

337.   After joining the program, Mr. Watkins learned it was not as advertised.

338.   There was inconsistent instruction from his instructors with no clear expectations.

339.   Mr. Watkins was precluded from getting consistent flying because of the shortage of available instructors.

340.   During his time as a student in the program, Mr. Watkins voiced his concerns to management regarding a dangerous situation about flying in bad weather during his training. His flight instructor forced him to fly in unsafe weather conditions, ultimately causing them to have to divert to an alternate airport.

341.   Ultimately, UAA expelled Mr. Watkins from the program in January of 2024, citing a lack of progress but without consideration of the lack of consistent instruction.

**BB.**   <u>Defendants deceive Jonathan Wizard into attending UAA and break their promises.</u>

342.   Jonathan Wizard began with UAA in February 2023.

343.   Mr. Wizard relocated to Arizona to attend UAA.

344.   He joined the program based on UAA and United's representations that it would be a one-year program and a direct path to United employment as a commercial pilot.

345.   UAA and United made these representations to Mr. Wizard through various marketing and advertising mechanisms, as well as through the nightly news.

346.     During his time in the program, he experienced significant delays and inconsistent training resources. Administrators would favor certain students other than Mr. Wizard for flight scheduling and/or evaluations.

347.     In addition to tuition, Mr. Wizard incurred tens of thousands of dollars in expenses in order to attend the program.

348.     Mr. Wizard completed the commercial pilot certificate and instrument ratings but was forced to obtain his CFI, CFII, CME and MEI training at another school.

**CC.   Plaintiffs suffer career damages.**

349.     In addition to the direct damages that Plaintiffs suffered as a result of Defendants' conduct, Plaintiffs suffered consequential damages in the form of lost economic opportunity.

350.     The UAA program was promised to be a one-year program that would prepare students for a career as a commercial pilot.

351.     Defendants' failure to live up to the representations they made about the program delayed or prevented Plaintiffs from careers as commercial pilots, thereby delaying or preventing them from obtaining the economic benefits of working as a commercial pilot, including salaries and bonuses customarily earned by commercial pilots.

## CLAIMS FOR RELIEF

**First Claim for Relief:**
**Violation of the Arizona Consumer Fraud Act**
**(by all Plaintiffs against both Defendants)**

352.     Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

353.     The Arizona Consumer Fraud Act provides:

The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1522(A).

354.    UAA's offer of education services qualifies as "merchandise" under the Consumer Fraud Act.

355.    UAA "sold" its "merchandise"—the education services—to Plaintiffs in exchange for tuition and fee payments.

356.    UAA made false promises and/or misrepresentations to Plaintiffs with respect to the length of time the UAA program would take, the resources available to students, and otherwise the quality and cost of the program.

357.    United made false promises and/or misrepresentations to Plaintiffs with respect to the length of time the UAA program would take, the resources available to students, and otherwise the quality and cost of the program.

358.    UAA and United made those false promises and misrepresentations with the intent that Plaintiffs would rely on them.

359.    Plaintiffs reasonably relied on Defendants' false representations and/or omissions when deciding to enroll with UAA.

360.    Defendants' misrepresentations concerned the fundamental qualities of the "merchandise" such that it cannot be said a consumer did not rely on the misrepresentations when choosing to purchase the advertised services.

361.    Defendants' made their misrepresentations and false promises through a variety of advertisements, including websites, social media posts, emails, and television broadcasts.

362.    Plaintiffs suffered damages as a direct and proximate result of Defendants' consumer fraud.

363.    Defendants' deceptive practices were wanton, reckless, spiteful, motivated by ill-will, and/or were made with reckless indifference to the rights, interests, and feelings of Plaintiffs,

therefore entitling them to an award of punitive damages.

**Second Claim for Relief:**
**Negligent Misrepresentation**
**(by all Plaintiffs against both Defendants)**

364.    Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

365.    Defendants owed Plaintiffs a duty to exercise reasonable care not to make misrepresentations as to the character or quality of services they offered.

366.    Similarly, Defendants owed Plaintiffs a duty to exercise reasonable care to disclose:

    a.  matters known to them that they know to be necessary to prevent their partial or ambiguous statement of the facts from being misleading;

    b.  subsequently acquired information that they know will make untrue or misleading a previous representation that when made was true or believed to be so;

    c.  the falsity of a representation not made with the expectation that it would be acted upon, if they subsequently learn that the other is about to act in reliance upon it in a transaction with them; and

    d.  facts basic to the transaction, if they know that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

367.    Defendants breached that duty by unreasonably misrepresenting the character and quality of the UAA program, including that it was a one-year program that was sufficiently resourced and that would enable students to begin careers as commercial airline pilots.

368.    Plaintiffs reasonably relied on Defendants' misrepresentations when they agreed to enroll with UAA.

369.    Defendants' misrepresentations concerned the fundamental qualities of the UAA

1    program such that it cannot be said a student did not rely on the misrepresentations when choosing

2    to enroll in the program.

3        370.    Plaintiffs suffered damages as a direct and proximate result of Defendants' negligent

4    misrepresentations, including economic damages and noneconomic damages including but not

5    limited to emotional distress, mental anguish, anxiety, humiliation, and inconvenience in an

6    amount to be proven at trial.

7        371.    Defendants'  negligent  misrepresentations  were  wanton,  reckless,  spiteful,

8    motivated by ill-will, and/or were made with reckless indifference to the rights, interests, and

9    feelings of Plaintiffs, therefore entitling them to an award of punitive damages.

10                                   **Third Claim for Relief:**
                                **Fraudulent Misrepresentation**
11                          **(by all Plaintiffs against both Defendants)**

12        372.    Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

13        373.    Defendants made false representations to Plaintiffs that the UAA program was a

14    one-year program that was sufficiently resourced and that would enable students to begin careers

15    as commercial airline pilots.

16        374.    A misrepresentation is fraudulent if the maker:

17        a.    knows or believes that the matter is not as he represents it to be,

18        b.    does not have the confidence in the accuracy of his representation that he states or

19              implies, or

20        c.    knows that he does not have the basis for his representation that he states or implies.

21        375.    Defendants'  misrepresentations  were  fraudulent  in  that  they  either  knew  the

22    representations were false or knew that they were ignorant as to whether the representations were

23    false.

24        376.    Plaintiffs were ignorant as to the falsity of Defendants' misrepresentations.

35

377.   Plaintiffs reasonably and justifiably relied on Defendants' misrepresentations.

378.   Defendants' misrepresentations concerned the fundamental qualities of the UAA program such that it cannot be said a student did not rely on the misrepresentations when choosing to enroll in the program or when choosing to enter into student loan agreements in connection with enrolling with UAA.

379.   As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs suffered damages, including economic damages and noneconomic damages including but not limited to emotional distress, mental anguish, anxiety, humiliation, and inconvenience in an amount to be proven at trial.

380.   Defendants' fraudulent misrepresentations were wanton, reckless, spiteful, motivated by ill-will, and/or were made with reckless indifference to the rights, interests, and feelings of Plaintiffs, therefore entitling them to an award of punitive damages.

**Fourth Claim for Relief:**
**Fraudulent Inducement**
**(by all Plaintiffs against both Defendants)**

381.   Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

382.   Defendants made false representations to Plaintiffs that the UAA program was a one-year program that was sufficiently resourced and that would enable students to begin careers as commercial airline pilots.

383.   Defendants' misrepresentations were material.

384.   Defendants knew their representations about the program were false or knew that they were ignorant as to whether the representations were true.

385.   Defendants intended that Plaintiffs would act on the misrepresentations by enrolling with UAA and by applying for and obtaining student loans in order to attend UAA.

386.   Plaintiffs did not know Defendants' representations were false, and they reasonably

and justifiably relied on the representations when enrolling with UAA and obtaining student loans.

387.    Defendants' misrepresentations concerned the fundamental qualities of the UAA program such that it cannot be said a student did not rely on the misrepresentations when choosing to enroll in the program or when choosing to enter into student loan agreements in connection with enrolling with UAA.

388.    As a result of Defendants' misrepresentations, Plaintiffs were fraudulently induced into enrolling with UAA and entering into student loan agreements in connection with enrolling with UAA.

389.    Defendants' fraudulent inducement of Plaintiffs caused them to suffer damages, including economic damages and noneconomic damages including but not limited to emotional distress, mental anguish, anxiety, humiliation, and inconvenience in an amount to be proven at trial.

390.    Defendants' fraudulent misrepresentations were wanton, reckless, spiteful, motivated by ill-will, and/or were made with reckless indifference to the rights, interests, and feelings of Plaintiffs, therefore entitling them to an award of punitive damages.

**Fifth Claim for Relief:**
**Negligence**
**(by all Plaintiffs against both Defendants)**

391.    Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

392.    Defendants owed Plaintiffs a duty of care to exercise reasonable and truthful practices in the advertising and marketing of their products and services so as not to mislead or cause foreseeable harm.

393.    Defendants, in breach of that duty, failed to exercise reasonable and truthful practices in the advertising and marketing of UAA to Plaintiffs.

394.    As a direct and proximate result of Defendants' breach of their duty of care,

1    Plaintiffs suffered damages.

2         395.    Defendants' breaches were wanton, reckless, spiteful, motivated by ill-will, and/or

3    were made with reckless indifference to the rights, interests, and feelings of Plaintiffs, therefore

4    entitling them to an award of punitive damages.

5    **Sixth Claim for Relief:**<br>**Civil Conspiracy**

6    **(by all Plaintiffs against both Defendants)**

7         396.    Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

8         397.    Defendants, upon information and belief, entered into a combination, agreement, or

9    mutual understanding with one another to engage in a scheme to defraud Plaintiffs and other

10   prospective students through materially false representations concerning the nature, quality, and

11   outcomes of the flight training programs offered by UAA.

12        398.    Defendants did engage in the fraudulent misrepresentations to induce Plaintiffs to

13   attend the program.

14        399.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered

15   damages, including economic damages and noneconomic damages including but not limited to

16   emotional distress, mental anguish, anxiety, humiliation, and inconvenience in an amount to be

17   proven at trial.

18        400.    Defendants' conduct was wanton, reckless, spiteful, motivated by ill-will, and/or

19   was made with reckless indifference to the rights, interests, and feelings of Plaintiffs, therefore

20   entitling them to an award of punitive damages.

21   **Seventh Claim for Relief:**<br>**Aiding and Abetting**

22   **(by all Plaintiffs against United)**

23        401.    Plaintiffs incorporate the foregoing allegations as if set forth verbatim herein.

24        402.    UAA engaged in tortious conduct through its misrepresentations to Plaintiffs

concerning its flight school and such tortious conduct caused Plaintiffs to suffer damages.

403.    Upon information and belief, United knew UAA's conduct in promoting the school to Plaintiffs through misrepresentations as to the program's resources and the time it would take to accomplish the program was tortious.

404.    United substantially assisted and encouraged UAA's tortious conduct by repeating UAA's misrepresentations through its extensive marketing presence.

405.    United's assistance and encouragement of UAA's tortious conduct contributed to and exacerbated Plaintiffs' damages, including economic damages and noneconomic damages including but not limited to emotional distress, mental anguish, anxiety, humiliation, and inconvenience in an amount to be proven at trial.

406.    United's aiding and abetting makes it jointly and severally liable for UAA's tortious conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court enter judgment in their favor and:

a.  Award Plaintiffs general, economic, noneconomic, compensatory, consequential, punitive, and nominal damages at an amount to be determined at trial;

b.  Award Plaintiffs pre- and post-judgment interest at the highest legal rates;

c.  Award Plaintiffs their attorneys' fees;

d.  Award Plaintiffs their costs and expenses, including expert witness costs, as provided by law;

e.  Award Plaintiffs such further relief that the Court deems just and proper; and

## **JURY DEMAND**

Plaintiffs demand a jury as to all issues so triable.

Respectfully submitted April 9, 2025.

**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**

*/s/ David K. TeSelle*
David K. TeSelle
Joshua Abromovitz
Patrick M. Sweet
Sophia E. Kyziridis
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on April 9, 2025, the foregoing First Amended Complaint was filed and served via the Court's CM/ECF system, which will send notification to all counsel of record.

*/s/ Laura M. Ramirez*