David K. TeSelle (#032057)
Joshua B. Abromovitz (#038401)
Patrick M. Sweet (pro hac vice)
Sophia E. Kyziridis (pro hac vice)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
2390 East Camelback Road, Ste. 403
Phoenix, AZ 84016
Telephone: (602) 777-7000
Email: dteselle@burgsimpson.com
jabromovitz@burgsimpson.com
psweet@burgsimpson.com
skyziridis@burgsimpson.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Anton Anderson; Bethel Banabu; Anant Bhattacharya; Jennifer Bummer; Kevin Chapa; Azia Charles; Candice Chen; Shawn Day; Molly Earnhardt; Blake Falls; Adela Gallegos; Norbertha Garcia; Filipe Ginza; Kana Ginza; Rick Gonzalez; Chris Hall; Cairen Howard; Cameron James; Lok Sum Ida Lau; Jennifer Lee; Joshua Lim; Daniel Madison; Sawyer Mills; Young Noh; Jacklyn Pope; Felicia Ragsdale; Jackie Taylor; Paige Texas; Brianna Tittle; Jenesis Tucker; Christian Turner; Jon Watkins; and Jonathan Wizard,

Plaintiffs,

v.

Westwind School of Aeronautics Phoenix, LLC d.b.a. United Aviate Academy, a Delaware limited liability company; and United Airlines, Inc., a Delaware corporation,

Defendants.

No. CV-25-00923-PHX-SHD

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT UNITED AIRLINES, INC.'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs, by and through their attorneys, Burg Simpson Eldredge Hersh & Jardine, P.C., submit their response in opposition to Defendant United Airlines' motion to dismiss, ECF No. 21, and provide the following memorandum in support of their response:

## INTRODUCTION

On January 23, 2023, United Airlines ("United") CEO Scott Kirby took the stage in Goodyear, Arizona at the inaugural "graduation" ceremony for United's wholly-owned flight school, Westwind School of Aeronautics Phoenix, LLC, d/b/a United Aviate Academy ("UAA"). He faced a room full of UAA students and their friends and families and expressed not only how proud he was of the students, "but of all the people at United that made this a reality."[1] Mr. Kirby then bragged that "there's only one airline in the world that's done something like this, and it's United Airlines."[2] He then discussed how UAA would be providing the workforce for United and that United "invested in the Aviate Academy" in Goodyear, Arizona as part of United's planning for the future.[3] Mr. Kirby ended his remarks by thanking "all the United employees who've made this dream a reality."[4] Following his remarks, Mr. Kirby congratulated students as they crossed the stage and they received diploma-like certificates and a "Certificate of Special Congressional Recognition" signed by Senator Mark Kelly of Arizona.[5]

Now, Mr. Kirby's remarks are noteworthy in this case for two reasons:

***First***, they demonstrate (along with other evidence discussed below) how United has been integral in the development and operation of UAA in Goodyear, Arizona and how United has purposefully directed its activities towards Arizona. The Court should find

---

[1] *See* **Exhibit 1**, Transcript of Youtube Video of United Aviate Academy First Graduation, at 11:8-13; *see also* United Airlines, *United Aviate Academy's First Graduating Class*, YOUTUBE (Jan. 26, 2023), available at https://www.youtube.com/watch?v=RmKvLdYvDOA.

[2] **Ex. 1**, at 12:12-15.

[3] *Id*. at 15:13-16.

[4] *Id.* at 17:15-16.

[5] **Exhibit 2**, Graduation Certificate; **Exhibit 3**, Senator Kelly Letter.

unavailing United's arguments that it is not subject to personal jurisdiction in Arizona in relation to the claims alleged in Plaintiffs' Second Amended Complaint, ECF No. 16 (hereinafter "Complaint").

***Second***, the graduation at which Mr. Kirby spoke was a complete and utter sham—only one of the "graduates" actually graduated. Nevertheless, United broadcasted the "graduation ceremony" on YouTube and linked to it across social media to give the false impression that its wholly-owned flight school was capable of graduating students in the one-year timeframe as they had been promising and would continue to promise.[6] Students received certificates stating they had completed training they had not actually completed; they were months and in some cases more than a year from actually achieving the flight ratings. Worse, United convinced a sitting U.S. Senator for Arizona to author letters of congratulations for non-graduating "graduates." In fact, Plaintiffs such as Filipe and Kana Ginza are among the "graduates" featured in the broadcasted ceremony who did not actually "graduate"; Kana Ginza finished 6 months later in July 2023, and Filipe Ganza finished a year later in January 2024.[7] These facts illustrate (along with other facts discussed below) United's involvement in making misrepresentations to Plaintiffs to cause them to enroll in UAA, misrepresentations that substantially harmed Plaintiffs. The Court should likewise find unavailing United's arguments that Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and deny United's motion to dismiss.

---

[6] *See* Second Amended Complaint, ECF No. 16, at ¶¶ 80, 161-167 ("Mr. Chapa later learned that the 'graduation ceremony' was a ruse; only one of the 'graduates' had actually graduated"), 361-363 (Ms. Lee saw social media posts showing a graduation ceremony…. Ms. Lee later learned that the 'graduation ceremony' was a ruse").

[7] *Compare* **Ex. 1**, at 21:17-20 (announcing Filipe Ginza as a graduate with UAA Ceo Dana Donati stating "So proud of you" and Mr. Kirby stating "Good job, Felipe"), 22:20-24 (announcing Kana Ginza (née Jacobson) as a graduate with Ms. Donati stating "So proud of you" and Mr. Kirby stating "Congratulations") *with* Complaint, at ¶ 287.

## FACTUAL BACKGROUND IN ADDITION TO THE SHAM GRADUATION AND REMARKS OF UNITED CEO SCOTT KIRBY

### A. United's development of UAA and the pervasive misrepresentations made to Plaintiffs.

United Airlines launched its "United Aviate" career development program in 2019 to address its anticipated need for new commercial airline pilots. Complaint, ¶ 42. In February 2020, United purchased Westwind School of Aeronautics Phoenix, LLC and rebranded it as United Aviate Academy. *Id.* at ¶ 43. United acquired the school to gain greater visibility and direction over the recruitment, development, and training of future pilots. *Id.* at ¶ 44. Since the acquisition, UAA has effectively presented itself as United. For example, the UAA Student Handbook discusses its commitment to the best psychologically safe environment in terms of United Airlines' core value of caring and contains the United Airlines "core4" branding. *Id.* at ¶ 61 (figure 5).[8] Moreover, United discusses UAA in SEC filings using statements such as "our new facility."[9]

United promoted UAA as part of its broader United Aviate pilot development initiative and as a mechanism to train large numbers of future pilots. *Id.* at ¶¶ 42-44. United sought to graduate at least 300 students during UAA's first year of operation. *Id.* at ¶ 53. United promoted UAA internally through its employee website, "Flying Together." *Id.* at ¶ 45. Information about UAA was widely shared among United employees, and it was common knowledge within the United employee community that UAA was affiliated with United and operated as a twelve-month program. *Id.* at ¶¶ 46-49.

After the acquisition, United and UAA represented to prospective students that UAA offered an intensive, accelerated flight training program designed to be completed within approximately twelve months. *Id.* at ¶¶ 54, 57-58. These representations were made

---

[8] *Compare* Complaint, at ¶ 61 (figure 5) *with* United Careers, *Frequently asked questions*, United.com, https://careers.united.com/us/en/faq.

[9] *See* **Exhibit 4**, Excerpt from United 2021 Form 10-K, at 11.

through UAA's website, United-maintained websites such as unitedaviate.com, emails to prospective students, admissions materials, and other marketing campaigns. *Id.* at ¶¶ 56-58. Figure 2 in the Complaint features an example of a marketing email from United describing the flight school as a "rigorous, year-long training program." *Id.*

United and UAA represented that the twelve-month timeline applied to completion of all FAA certifications required to become a commercial pilot. *Id.* at ¶¶ 54, 58, 65. The twelve-month timeline was emphasized as a defining feature of the program and a central inducement for enrollment. *Id.* at ¶¶ 58, 64. United and UAA also represented that students would train full-time and receive frequent flight or simulator activity. *Id.* at ¶¶ 54, 142, 219.

United and UAA further represented that the Academy would provide sufficient aircraft availability, access to instructors, and favorable instructor-to-student ratios to allow students to progress continuously through the program. *Id.* at ¶¶ 65, 67, 142, 219, 252. Tuition schedules and program milestones were structured around the premise that students would complete the program within twelve months. *Id.* at ¶¶ 66-68. During the relevant period, UAA charged tuition ranging from approximately $71,250 to more than $100,250, exclusive of additional expenses. *Id.* at ¶¶ 66, 68.

United and UAA partnered with third-party lenders to facilitate student loans covering tuition, fees, and living expenses. *Id.* at ¶ 69. United and UAA also partnered with JPMorgan Chase to fund scholarships awarded through various professional pilot organizations. *Id.* at ¶ 70. The majority of students were required to take out student loans to attend the program. *Id.* at ¶¶ 71-74. Students entered into those loan agreements with the expectation—based on Defendants' representations—that they would complete the program within twelve months and obtain the promised credentials. *Id.* at ¶¶ 72-74.

As enrollment increased, students experienced reductions in flight time and instructor availability. *Id.* at ¶¶ 76-77. Even after it became apparent that UAA could not

meet the 12-month timeline, United and UAA continued making the same representations to new prospective students, including Plaintiffs. *Id.* at ¶ 78. UAA reassured students that it was working to improve processes and reiterated commitments to progress students through the program. *Id.* at ¶ 79. UAA also held a graduation ceremony suggesting that students had completed the program when many had not. *Id.* at ¶ 80.

**B. <u>The fraud is discovered; UAA loses accreditation.</u>**

UAA was accredited by the Accrediting Commission of Career Schools and Colleges ("ACCSC"). *Id.* at ¶ 82. In May 2024, ACCSC issued a warning to UAA for failing to comply with accreditation standards, including exceeding enrollment limits intended to ensure sufficient resources for students and failing to demonstrate financial and operational stability. *Id.* at ¶¶ 83-86. Despite the warning, UAA increased enrollment. *Id.* at ¶ 85. In August 2024, ACCSC placed UAA on probation, and UAA ultimately withdrew from accreditation effective January 15, 2025. *Id.* at ¶¶ 88-89.

Beginning around the time of the ACCSC warning, UAA began expelling students, including students who were delayed in completing the program. *Id.* at ¶ 87. United benefited from UAA's enrollment and marketing practices and continued to make or repeat representations regarding program duration and resources despite knowledge of operational deficiencies. *Id.* at ¶¶ 39, 78-79, 545.

In the Complaint, Plaintiffs assert claims against UAA and United for (1) violation of the Arizona Consumer Fraud Act, (2) negligent misrepresentation, (3) fraudulent misrepresentation, (4) fraudulent inducement, (5) negligence, and (6) civil conspiracy. Plaintiffs assert an additional claim against United for aiding and abetting.

**<u>ARGUMENT</u>**

Perhaps the one thing the parties can agree on in this briefing is the desire to conserve both judicial resources and the resources of the parties and to avoid duplicative briefing. To that end, Plaintiffs incorporate herein their response in opposition to UAA's

motion to dismiss. For all the reasons stated therein, Plaintiffs have alleged sufficient factual detail to satisfy Fed. R. Civ. P. 9(b) and the general pleading requirements under *Twombly/Iqbal*. Moreover, Defendants fail to establish their (presumed-to-be) affirmative defense of expiration of the statute of limitations as that is a factual question this Court cannot resolve in Defendants' favor at the pleading stage.

## A. The Court has personal jurisdiction over United in relation to the claims alleged in Plaintiffs' Complaint.

United argues this Court lacks personal jurisdiction over it by ignoring factual allegations in the Complaint, erroneously resolving factual disputes in United's favor, and ignoring United's recurring and purposeful contacts with Arizona related to its development and operation of UAA, including through marketing UAA to Plaintiffs with the goal of having Plaintiffs relocate to Arizona to attend its wholly-owned flight school.

### 1. *Legal Standard*

"The Arizona and federal rules governing personal jurisdiction are identical, as Arizona's long arm statute 'provides for personal jurisdiction co-extensive with the limits of federal due process.'" *Modulus Glob. Inc. v. Gruhn*, No. CV-24-03195-PHX-ROS, 2026 U.S. Dist. LEXIS 30058, 2026 WL 406734, at *7 (D. Ariz. Feb. 13, 2026). The plaintiff bears the burden of establishing personal jurisdiction. *Hogen v. X Corp.*, No. CV-24-03308-PHX-MTL, 2025 U.S. Dist. LEXIS 210806, 2025 WL 3003077, at *3 (D. Ariz. Oct. 24, 2025). "The plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "The plaintiff cannot simply rest on the bare allegations of its complaint, *but uncontroverted allegations in the complaint must be taken as true.*" *Id.* (emphasis added). "[The Court] may not assume the truth of allegations in a pleading which are contradicted by affidavit" but should resolve factual disputes in the plaintiff's favor. *Id.* (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)).

2. *<u>Both the facts alleged in the complaint and included herein support personal jurisdiction over United with respect to Plaintiffs' claims.</u>*

United purposefully availed itself of the privilege of doing business in Arizona when it purchased UAA in Goodyear, Arizona and took extensive action to promote UAA in Goodyear, Arizona and induce Plaintiffs to attend UAA in Goodyear, Arizona. As United CEO Mr. Kirby stated, the sham graduation and the circumstances by which Plaintiffs found themselves in this situation in Arizona was thanks to "all the United employees who've made this dream [or nightmare, according to Plaintiffs] a reality."[10]

"Due process requires that a defendant have at least 'minimum contacts' with the forum state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GovernmentGPT Inc. v. Axon Enter.*, 769 F. Supp. 3d 959, 975 (D. Ariz. 2025) (quoting *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To establish specific personal jurisdiction, the Court should employ a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 976 (quoting *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015)). If a Plaintiff satisfies the the first two prongs, the burden then shifts to the defendant to establish why it would be unreasonable for the Court to exercise jurisdiction. *Id.*

---

[10] **Ex. 1** at 17:15-16.

***First***, the facts demonstrate United purposefully directed its activities at Arizona. United argues that the facts only support that United maintained websites and owned the school. Not true. What United really asks this Court to conclude is that United can purchase an Arizona flight school, attach its branding throughout the operations and marketing of the flight school in Arizona, claim responsibility for what United characterizes as the successful operation of the flight school in Arizona, make misrepresentations to induce students such as Plaintiffs to attend United's wholly owned flight school in Arizona, and cause harm to Plaintiffs in Arizona, yet United somehow cannot face justice in Arizona in connection with those substantial contacts with the Grand Canyon State. Such a conclusion is not supported.

This is not a case where jurisdiction relies only on corporate ownership. It is not that United merely owned UAA, it is that United's CEO made it clear that United was responsible for UAA's activities: "there's only one airline in the world that's done something like this, and it's United Airlines." It is that United took affirmative steps to market the flight school both internally and externally of United to induce people to move to Arizona and pay money to United's wholly-owned subsidiary in exchange for flight training.

***Second***, Plaintiffs claims patently arise out of or relate to United contacts with the forum state. The Complaint centers on United's efforts to misrepresent and induce Plaintiffs to attend the flight school in Arizona and United's operation and investment of resources (or lack thereof) for the flight school in Arizona.

***Finally***, the reasonableness of subjecting United to personal jurisdiction in Arizona for Plaintiffs' claims is patent in light of United's contacts with the state and the nature of Plaintiffs' claims. United could have chosen anywhere to establish and operate its flight school and induce students to attend. It chose Arizona.

## B. <u>Plaintiffs have sufficiently pleaded claims for which relief can be granted.</u>

### 1. *<u>The Court should deny United's motion because Plaintiffs have pleaded with particularity their claims sounding in fraud.</u>*

United repeats UAA's flawed arguments in motion to dismiss, ignoring vast portions of the Complaint to generally claim there is a lack of particularity. A review of the entire complaint, though, demonstrates more than sufficient particularity to support claims against United.

#### *i. Legal Standard.*

When a party is alleging fraud, it "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). This particularity requirement is met when the allegations of fraud are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Grier v. Finjan Holdings, Inc. (In re Finjan Holdings, Inc. Sec. Litig.)*, 58 F.4th 1048, 1057 (9th Cir. 2023). The three primary purposes of Rule 9(b) are

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). A pleading "is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) (quoting *Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866, 866 (9th Cir. 1977)).

In this case, Plaintiffs have alleged the who, what, where, when and how of claims against United.

***ii. Plaintiffs' Complaint meets the particularity requirements.***

**Who:** United Airlines, Inc., acting through its corporate leadership and marketing apparatus, including United CEO Scott Kirby, senior United executives, and United's United Aviate recruiting team. Complaint, ¶¶ 42–45, 53, 156 ("John Slater, United's Senior Vice President of inflight service also introduced the program in United emails and newsletters."), 162. **What:** United made and repeatedly disseminated materially false statements that United Aviate Academy—owned by United—was a fully resourced, accelerated flight-training program capable of delivering *all* required FAA certifications within approximately twelve months, positioning graduates for careers as commercial airline pilots. *Id.* at ¶¶ 54, 57–58, 64–65, 78. **Where:** United communicated these misrepresentations nationwide through United-affiliated websites (including unitedaviate.com), United-branded admissions letters and enrollment materials, United-sent emails, internal United employee platforms (Flying Together), orientation sessions, social-media campaigns, and high-visibility public events and media coverage featuring United leadership. *Id.* at ¶¶ 45–46, 56–58, 60–62, 156, 162. **When:** United began making these representations when it acquired UAA in February 2020 continued doing so through at least 2024, including after United became aware that the Academy lacked sufficient instructors, aircraft, and administrative capacity to deliver the promised twelve-month program. ¶¶ 43–44, 76–79. **How:** United induced reliance by branding the Academy as a core component of United's long-term pilot pipeline, publicly touting accelerated timelines through United executives and national marketing, structuring tuition and loan disbursement schedules around a twelve-month completion model, and continuing to promote that model even as students experienced systemic delays. *Id.* at ¶¶

42–44, 53–54, 58, 64, 66–68, 71–74, 78–79. United's use of senior leadership—including CEO Scott Kirby's public participation in Academy graduation ceremonies—further reinforced the credibility of these representations and signaled United's endorsement of the program's advertised duration and outcomes. *Id.* at ¶¶ 162, 253–254. As a result, students enrolled, incurred tuition and loan obligations often exceeding six figures, and relied on United's representations in making irreversible financial and career decisions. *Id.* at ¶¶ 71–74, 545.

To support its argument, United necessarily ignores the substantial number of factual allegations in the Complaint addressing how United deceived Plaintiffs and how it controlled UAA as part of that process. *See* Ex. 1, *supra,* illustrating United being responsible for making the "dream" a "reality."

2. *Plaintiffs properly allege a violation of the Arizona Consumer Fraud Act.*

United argues there are no allegations that United committed wrongful acts in Arizona and therefore the Arizona Consumer Fraud Act cannot apply. That is not true. There are only two elements necessary to establish violation of the Arizona Consumer Fraud Act: (1) the defendant made a misrepresentation in connection with the sale or advertisement of merchandise, and (2) that conduct proximately caused the plaintiff to suffer damages. *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1009 (9th Cir. 2023). United effectively commits the same error that the defendants made in *Vanguard Specialized Funds v. VEREIT Inc.*, No. CV-15-02157-PHX-ROS, 2016 U.S. Dist. LEXIS 137881, at *31 (D. Ariz. Oct. 3, 2016), when it relies primarily upon one paragraph from *State ex rel. Corgin v. Goodrich*. In *Vanguard Specialized Funds*, the Court noted *Goodrich* "did not hold ACFA applied only to acts committed *entirely* within Arizona, as [defendants] imply." *Id.* Rather, the question is whether the acts "have a substantial connection to Arizona." *Id.*

In this case, the Complaint states a substantial connection between United's deceptive acts and Arizona; United's conduct was designed to induce Plaintiffs to enter into business with United's wholly owned flight school in Arizona. Moreover, United did commit acts in Arizona in furtherance of their deceptive practices, including promoting the sham graduation in Goodyear, Arizona and broadcasting that to prospective students, including many of the Plaintiffs. "These allegations fit with 'the purpose of the Consumer Fraud Act, which is to protect the public from deceptive acts.'" *Id.* at *33.

*3. Plaintiffs plausibly allege fraud.*

To establish a claim for fraud, a Plaintiff must establish "the speaker's knowledge of its falsity or ignorance of its truth." *Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. App. 1978). United claims Plaintiffs have failed to allege facts support this element. Again, not true. First, United mistakenly argues for a standard in which a misrepresentation is actionable only if known to be false at the time it was made. The proper evaluation is whether the speaker had knowledge or ignorance of its truth. To that end, United's reference to a single allegation in the Complaint as to what UAA is believed to have represented to United at the time United purchased the school does not support the conclusion that Plaintiffs have failed to allege an essential element. In fact, the Complaint goes on to state that as UAA's operations ramped up under United that "students began seeing reductions in flight time and turnover in instructors." Complaint, at ¶¶ 76-79. Then, the school for which Scott Kirby attributes success to "all the United employees" knowingly exceeded its enrollment caps from the accrediting body. The obvious inferences from the Complaint were that United and its wholly owned subsidiary knew their available resources were dwindling in light of growing enrollment yet persisted in their misrepresentations as to the ability to graduate in approximately one year. At best, United made representations as to the timing of the program and the available resources while ignorant as to whether those representations were actually truthful.

4. *Plaintiffs allege a plausible claim for aiding and abetting.*

As an initial matter, United's arguments that Plaintiffs' aiding and abetting claim fails because the underlying tort claims fail is unavailing for all of the reasons expressed above and in response to UAA's motion to dismiss supporting that Plaintiffs have met the pleading standard and alleged plausible claims for relief.

Second, United's proposition that a negligence claim cannot serve as the predicate of an aiding and abetting claim is simply wrong. To support its position United cites *Kretsch v. Barton*, No. CV-23-00411-PHX-ROS, 2024 WL 962181, at *7 (D. Ariz. Mar. 6, 2024). In *Kretsch*, though, the defendant (but not the Court) cited *Dube v. Likins*, 167 P.3d 93, 100 (Ariz. Ct. App. 2007), in support of that proposition and the Court dismissed the claim because the plaintiff did "not challenge Defendants' interpretation of Arizona law." *Id.* It turns out that was a terribly unjust result because *Dube v. Likins* does not support that proposition at all. In fact, the *Dube* court did not address that issue at all.

It remains the case that to assert a claim for aiding and abetting, a Plaintiff must allege the following elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Van Weelden v. Hillcrest Bank*, No. 2:10-cv-01833-PHX-JAT, 2011 U.S. Dist. LEXIS 20180, at *15 (D. Ariz. Feb. 28, 2011). Moreover, Arizona has adopted the Restatement (Second) of Torts, § 876, which includes as examples liability where the predicate tort was negligence. *Id.*; *see* Restatement (Second) of Torts, § 876, cmt. d.

Finally, United makes a sweeping statement that there are no facts showing how United aided and abetted UAA's tortious conduct. That is not true. The Complaint contains ample allegations as to how United repeated and amplified UAA's misrepresentations so as to induce Plaintiffs to attend UAA. Moreover, UAA's misrepresentations carried

substantially more weight when backed by United. *See*, e.g., Complaint, at ¶ 495 ("she was swayed to join the program based on UAA's affiliation with United Airlines."). As CEO Scott Kirby intimated in his "graduation" remarks, United employees were instrumental in the establishment and operation of UAA, including its marketing, and the obvious inference is that United lended its weight to UAA and substantially increased the impact of the school's misrepresentations.

Accordingly, Plaintiffs have alleged facts establishing plausible claims for relief and the Court should deny United's motion.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request the Court deny United's motion to dismiss and grant Plaintiffs such further relief as the Court deems proper.

Dated: February 26, 2026.

*/s/ Patrick M. Sweet*
David K. TeSelle (#032057)
Joshua B. Abromovitz (#038401)
Patrick M. Sweet (pro hac vice)
Sophia E. Kyziridis (pro hac vice)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
2390 East Camelback Road, Ste. 403
Phoenix, AZ 84016
Telephone: (602) 777-7000
Email: dteselle@burgsimpson.com
jabromovitz@burgsimpson.com
psweet@burgsimpson.com
skyziridis@burgsimpson.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 26, 2026, the foregoing was filed with the Court and served upon all parties of record via the Court's CM/ECF system.

Dated: July 17, 2025

*/s/ Brenda Westra*