David K. TeSelle (#032057)
Joshua B. Abromovitz (#038401)
Patrick M. Sweet (pro hac vice)
Sophia E. Kyziridis (pro hac vice)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
2390 East Camelback Road, Ste. 403
Phoenix, AZ 84016
Telephone: (602) 777-7000
Email: dteselle@burgsimpson.com
jabromovitz@burgsimpson.com
psweet@burgsimpson.com
skyziridis@burgsimpson.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Anton Anderson; Bethel Banabu; Anant Bhattacharya; Jennifer Bummer; Kevin Chapa; Azia Charles; Candice Chen; Shawn Day; Molly Earnhardt; Blake Falls; Adela Gallegos; Norbertha Garcia; Filipe Ginza; Kana Ginza; Rick Gonzalez; Chris Hall; Cairen Howard; Cameron James; Lok Sum Ida Lau; Jennifer Lee; Joshua Lim; Daniel Madison; Sawyer Mills; Young Noh; Jacklyn Pope; Felicia Ragsdale; Jackie Taylor; Paige Texas; Brianna Tittle; Jenesis Tucker; Christian Turner; Jon Watkins; and Jonathan Wizard,

Plaintiffs,

v.

Westwind School of Aeronautics Phoenix, LLC d.b.a. United Aviate Academy, a Delaware limited liability company; and United Airlines, Inc., a Delaware corporation,

Defendants.

No. CV-25-00923-PHX-SHD

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT WESTWIND SCHOOL OF AERONAUTICS PHOENIX, LLC d.b.a. UNITED AVIATE ACADEMY'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs, by and through their attorneys, Burg Simpson Eldredge Hersh & Jardine, P.C., submit their response in opposition to Defendant Westwind School of Aeronautics Phoenix, LLC's motion to dismiss, ECF No. 20, and provide the following memorandum in support of their response:

**INTRODUCTION**

In a 60-page complaint containing nearly 600 enumerated paragraphs, Plaintiffs laid out detailed factual allegations supporting plausible claims against United Airlines ("United") and Westwind School of Aeronautics Phoenix, LLC, d/b/a United Aviate Academy ("UAA") on account of their myriad misrepresentations as to the quality and characteristics of the UAA flight school in Goodyear, Arizona. *See generally* Second Amended Complaint, ECF No. 16 (hereinafter "Complaint"). The Complaint identifies specifically the misrepresentations both United and UAA made to Plaintiffs concerning the length of the flight school program and, for example, that it would feature "industry-leading resources, equipment and accommodations." *See, e.g., Id.* at ¶¶ 57-58. The complaint even included quotes from and screenshots of United and UAA documents expressly making the misrepresentations at issue.

UAA seeks dismissal of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and argues (a) Plaintiffs fail to plead with particularity, (b) Plaintiffs failed to state claims for relief, and (c) certain Plaintiffs' claims are untimely. The Court should find each of UAA's arguments unavailing and deny UAA's motion. ***First***, Plaintiffs have plead with the requisite particularity their claims sounding in fraud. The "who, what, when, where, and how" of Defendants' fraud is addressed in detail in the Complaint; UAA's arguments to the contrary ignore pertinent allegations and otherwise argue for an onerous pleading standard supported by neither the Federal Rules of Civil Procedure nor relevant case law. ***Second***, the UAA now moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) based on arguments

that Plaintiffs somehow did not allege enough. The Court should find such arguments unavailing and deny UAA's motion.

## LEGAL STANDARD

Pursuant to Rule 8, a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose behind the rule is give a defendant "fair notice of what the… claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The requirement is met where a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Early Warning Servs. LLC v. Johnson*, No. CV-24-01587-PHX-SMB, 2025 U.S. Dist. LEXIS 89594, 2025 WL 1370640, at *3 (D. Ariz. May 12, 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In evaluating a motion to dismiss, a court must "take as true the operative complaint's well-pleaded allegations, including any such allegations that rely on the incorporation of documents attached to the complaint," and "draw all reasonable inferences in favor" the non-moving party. *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022).

## FACTUAL BACKGROUND

### A. The development of UAA and the pervasive misrepresentations made to Plaintiffs.

In February 2020, United Airlines purchased Westwind School of Aeronautics Phoenix, LLC and rebranded it as United Aviate Academy ("UAA"). Second Amended Complaint, ECF No. 16, at ¶ 43. UAA was promoted as a flagship flight training academy intended to serve as a high volume pipeline for future commercial airline pilots. *Id.* at ¶¶ 42-44. UAA was marketed as a core component of United's long term pilot recruitment strategy, with the goal of training and graduating hundreds of pilots annually. *Id.* at ¶¶ 42-44, 53. UAA represented that it possessed sufficient aircraft, instructors, facilities, and administrative infrastructure to train large numbers of students each year. *Id.* at ¶ 49.

From the outset of its operations, UAA represented to prospective students that it offered an intensive, accelerated flight training program that could be completed in approximately twelve months. *Id.* at ¶¶ 54, 57-58. These representations were made through UAA's website, United affiliated websites, admissions letters, enrollment agreements, student handbooks, emails, orientation sessions, and marketing campaigns. *Id.* at ¶¶ 56, 58-62. UAA represented that the 12-month timeline applied to completion of all required FAA certifications necessary to qualify as a commercial pilot. *Id.* at ¶¶ 54, 58, 65. UAA described the 12 month timeline as a defining feature of the program and emphasized it as a primary reason students should enroll. *Id.* at ¶¶ 58, 64.

UAA represented that students would receive consistent flight time, frequent access to instructors, favorable instructor to student ratios, and sufficient aircraft availability to allow continuous progress through the program. *Id.* at ¶¶ 65, 67, 142, 219, 252, 456. UAA further represented that students would train full time, with flight or simulator activity occurring multiple days per week. *Id.* at ¶¶ 54, 142, 219. UAA mapped out tuition schedules and training milestones based on the premise that students would complete the program within twelve months. *Id.* at ¶¶ 66-68.

Ironically, UAA attaches to its motion a series of captures from the Wayback Machine in an attempt to cast Plaintiffs' screenshots in its Complaint as misleading, but the Wayback Machine captures actually support Plaintiffs' position. For example, Exhibit 1-A to UAA's motion shows plainly how UAA revised its website marketing after Plaintiffs were fraudulently induced to attend UAA to remove representations as to the length of the program. Between the captures of UAA's website on September 10, 2024, and October 10, 2024, UAA edited its website to state portions of the program would be completed "in as little as" a number of months and added a whopping 8 asterisks pointing to a caveat as to timing that did not previously exist.




UAA charged tuition ranging from approximately $71,250 to more than $100,000, exclusive of additional expenses such as housing, books, exams, and check rides. See *Id.* at ¶¶ 66, 68. UAA partnered with lenders to facilitate student loans covering tuition, fees, and living expenses, and the majority of students were required to borrow substantial sums to attend the program. *Id.* at ¶¶ 69-74. Students entered into loan agreements with the expectation—based on UAA's representations—that they would complete the program in twelve months, obtain the promised credentials, and begin working as commercial pilots. *Id.* at ¶¶ 72-74.

**B. <u>UAA fails to live up to its promises, and its misrepresentations harm Plaintiffs</u>**

In practice, UAA lacked sufficient aircraft, simulators, instructors, and administrative staff to deliver the program as advertised. *Id.* at ¶¶ 76-77, 102-104, 114. As enrollment increased, students experienced significant reductions in available flight time and frequent instructor turnover. *Id.* at ¶¶ 76-77. Students routinely encountered long gaps between flights, repeated instructor reassignments, inconsistent instruction, and extended delays in progressing through required certifications. *Id.* at ¶¶ 104, 113-115, 127, 145, 181-182, 238-239. Despite these deficiencies, UAA continued enrolling new students without materially increasing resources. *Id.* at ¶¶ 76, 78, 171, 236, 259, 311.

Even after UAA knew or should have known that students could not realistically complete the program within twelve months, it continued to market the program as a twelve month pathway to a commercial pilot career. *Id.* at ¶¶ 63, 78. UAA continued to repeat the same 12 month representations to new and existing students through admissions materials, orientations, and ongoing communications. *Id.* at ¶¶ 78-79. When students raised concerns regarding delays, UAA represented that internal process improvements were underway and reassured students that they would soon progress through the program. *Id.* at ¶ 79. Those reassurances did not result in meaningful improvements, and systemic delays persisted. *Id.* at ¶¶ 76-78, 102-104.

UAA staged public "graduation ceremonies" and promotional events suggesting that large numbers of students had successfully completed the program. *Id.* at ¶¶ 80, 167, 253-254, 363. In reality, many of the students highlighted at these events had not completed all required training or certifications. *Id.* at ¶¶ 80, 167, 254, 363. These events created the misleading impression that UAA's program was operating as advertised and that students were graduating on schedule. *Id.* at ¶¶ 80-81, 167.

### C. <u>UAA loses its accreditation; the fraud is discovered.</u>

UAA was accredited by the Accrediting Commission of Career Schools and Colleges ("ACCSC"). *Id.* at ¶ 82. In May 2024, ACCSC issued a formal warning to UAA for failing to comply with accreditation standards, including exceeding enrollment caps and lacking sufficient resources. *Id.* at ¶¶ 83-86. The enrollment cap was intended to ensure UAA had adequate capacity to support students. *Id.* at ¶ 84. Rather than reducing enrollment, UAA increased the number of enrolled students beyond the permitted cap. *Id.* at ¶ 85.

After receiving accreditation warnings, UAA began expelling or "offboarding" students who were delayed in progressing through the program. *Id.* at ¶¶ 87, 118, 130, 147, 172, 241-242. Many students were expelled despite being in good academic standing and

despite delays caused by UAA's own lack of instructors, aircraft, and scheduling capacity. *Id.* at ¶¶ 118, 130, 148-149, 184, 195, 209, 241, 344. These expulsions often triggered immediate repayment obligations on student loans. *Id.* at ¶ 196. As a result, students were left with substantial debt but without the credentials UAA promised. *Id.* at ¶¶ 196, 537-539.

In August 2024, ACCSC placed UAA on probation after UAA failed to address prior warnings. *Id.* at ¶ 88. UAA ultimately withdrew from ACCSC accreditation effective January 15, 2025. *Id.* at ¶ 89. As a result of UAA's misrepresentations regarding program length, resources, and outcomes, students suffered substantial financial losses, delayed or foregone career opportunities, and long term economic harm. *Id.* at ¶¶ 537-539.

In the Complaint, Plaintiffs assert claims against UAA and United for (1) violation of the Arizona Consumer Fraud Act, (2) negligent misrepresentation, (3) fraudulent misrepresentation, (4) fraudulent inducement, (5) negligence, and (6) civil conspiracy. Plaintiffs assert an additional claim against United for aiding and abetting.

## ARGUMENT

### A. The Court should deny UAA's motion because Plaintiffs have pleaded with particularity their claims sounding in fraud.

Plaintiffs' Complaint is sufficiently detailed that it put UAA on notice that it needed to obtain historical snapshots of its website to evaluate the representations it was making to Plaintiffs as to the length and quality of its flight school program. *See* Exhibit 1 to UAA's motion. Yet at the same time, UAA argues to the Court that the nearly 600 enumerated paragraphs of Plaintiffs' Complaint fail to allege claims with particularity that would put them on notice of the misrepresentations. The incongruity of UAA's own motion demonstrates well that Plaintiffs' pleaded with sufficient particularity their claims against UAA and that the Court should deny UAA's motion to dismiss.

When a party is alleging fraud, it "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). This particularity requirement is met when the allegations of fraud are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."

Grier v. Finjan Holdings, Inc. (In re Finjan Holdings, Inc. Sec. Litig.), 58 F.4th 1048, 1057 (9th Cir. 2023). The three primary purposes of Rule 9(b) are

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). A pleading "is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) (quoting *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1977)).

In this case, Plaintiffs have alleged the who, what, where, when and how of UAA's deceptive conduct with sufficient particularity, but UAA is pushing for an onerous standard that is unsupported by cited authority and contrary to the three primary purposes of the particularity standard.

*1. The Who: UAA made misrepresentations to Plaintiffs.*

UAA complains that nine Plaintiffs fail to identify who engaged in the deceptive conduct underpinning their claims. This is not true. The only way to arrive at this

conclusion would be to wholly ignore the detailed allegations specifically stating UAA took action to deceive these Plaintiffs. UAA itself communicated the representations at issue directly to prospective and enrolled students, including to Plaintiffs Banabu, Charles, Chen, Hall, Lim, Mills, Taylor, Tucker, and Wizard, through its own website, United affiliated websites, admissions letters, enrollment agreements, student handbooks, orientation sessions, emails, and marketing campaigns. Complaint, at ¶¶ 56, 58-62. The complaint alleges that UAA continued to repeat these representations through ongoing emails, orientations, and other direct communications with Plaintiffs even after it knew or should have known that the representations were false. *Id.* at ¶¶ 63, 78-79. The Complaint even provides screenshots from UAA's website and from UAA documents.

In ignoring all of the salient facts within the Complaint, UAA primarily complains of improper group pleading. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant… and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *In re Mortg. Elec. Registration Sys. Litig.*, 744 F. Supp. 2d 1018, 1025 (D. Ariz. 2010). The chief problem with UAA's argument, though, is that it ignores dozens of allegations specifically identifying whether United, UAA, or both were acting. Moreover, it ignores that this is not a case like *In re Mortg. Elec. Registration Sys. Litig.* with hosts of unrelated defendants in different positions. Rather, the facts of the complaint demonstrate that UAA and United were acting in concert to promote UAA through the misrepresentations as to the length and quality of the program; it is why there are claims for civil conspiracy and for aiding and abetting. When you have such coordinated conduct between an entity and its wholly owned subsidiary, it does not violate Rule 9(b) for a complaint to state that both such defendants engaged in the tortious conduct at issue.

*2. The What: UAA misrepresented that it's program was an "accelerated", 12-month program with "industry-leading resources, equipment and accommodations."*

Plaintiffs Complaint provides quotes and excerpts from documents and websites illustrating clearly the misrepresentations at issue. In fact, the Complaint does such a good job of putting UAA on notice of its misrepresentations that UAA devotes several paragraphs of its motion attempting to convince the Court to view facts and draw inferences in UAA's favor that this Court is not permitted to do when addressing a Rule 12 motion. *See Shields*, 32 F.4th at 1220. UAA does this, for example, by quibbling that some sections of the website say "estimate" or "approximate" and claiming there can be no misrepresentation. That is not true. First, UAA ignores the full body of factual allegations showing pervasive representations as to the length of the program and that in reality finishing the program within the 12-month timeframe stated through all of the materials—UAA's website, its handbooks, in its email communications, and representations by its CEO, Dana Donati—was the exception. This is not a case about simply whether a student graduated in 12 months or "approximately" 12 months, this is a case about whether it was ever likely that the student would graduate in 12 months. And the factual allegations in the complaint demonstrate UAA made misrepresentations to all Plaintiffs as to the timing of the program and the quality of the program that caused the Plaintiffs harm.

*3. The Where: Emails, TV advertisements, websites, letters, handbooks—the Complaint identifies where UAA made its misrepresentations.*

This is not a case about a single individual making a representation to a individual. This is a case about a coordinated marketing campaign that made material misrepresentations. The complaint alleges UAA made misrepresentations directly to Plaintiffs through multiple, specific communication channels, including UAA's own website, United-affiliated websites, admissions letters, enrollment agreements, student handbooks, orientation sessions, and email communications sent by UAA personnel.

Complaint, at ¶¶ 56, 58-62. UAA further disseminated these representations through marketing campaigns and promotional materials under its control, and continued to repeat them during orientations and in ongoing emails and direct communications with students after enrollment. *Id.* at ¶¶ 56, 58-62, 78-79. These allegations identify with particularity the precise places and media where the misrepresentations appeared, including written contracts and handbooks provided to students, electronic communications sent by UAA, and statements published on UAA-controlled web platforms. *Id.* ¶¶ 56, 59-61. Again, the sources were pleaded with such particularity that UAA was motivated to pull its own website to evaluate the representations.

4. *The When: UAA embarked on its marketing campaign when United purchased the school.*

Again, this is not a case about a single conversation or representations made by an individual. This case is about the coordinated marketing of UAA across different media between 2020 and 2024. As detailed in the Complaint it is during that time frame that each of the Plaintiffs was exposed to UAA's marketing efforts, such as the website, making the misrepresentations at issue. UAA's marketing efforts at issue in this case began when United bought the school. The complaint alleges that UAA began making the challenged representations when United purchased and rebranded the flight school in 2020 and continued making them throughout the period in which Plaintiffs applied to, enrolled in, and attended UAA. *Id.* at ¶¶ 43-44, 54, 57-58. UAA repeated these representations before enrollment through its marketing and admissions process and continued repeating them during orientations, through enrollment agreements and student handbooks, and in ongoing communications with students while they were enrolled in the program. *Id.* at ¶¶ 56, 58-62, 78-79. Even after UAA knew or should have known that students could not complete the program within the represented timeframe, it continued making the same

representations through at least 2024, including after systemic delays emerged and accreditation warnings were issued. *Id.* at ¶¶ 63, 76-78, 83-86.

5. *The How: UAA never had or obtained the resources to accommodate the number of students enrolled.*

Finally, the "how" is straightforward. UAA simply lacked the resources or ability to accommodate all of the students it enrolled. This ultimately came to light when UAA's accrediting body sought to enforce enrollment caps. Instead of complying with the caps, UAA withdraw from the accrediting body. Specifically, the complaint alleges that UAA's representations were false because UAA never had—and did not later obtain—the aircraft, instructors, simulators, administrative staff, or scheduling capacity necessary to deliver the program as advertised. *Id.* at ¶¶ 63, 76-77, 102-104, 114. As enrollment increased, UAA's resource shortages caused students to experience long gaps between flights, frequent instructor turnover, inconsistent instruction, and extended delays in progressing through required certifications, making completion within the represented timeframe unlikely at best. *Id.* at ¶¶ 76-77, 104, 113-115, 127, 145, 181-182, 238-239. Despite knowing or having reason to know that these systemic deficiencies made its representations untrue, UAA continued enrolling students and repeating the same representations without disclosing its inability to perform as promised. *Id.* at ¶¶ 63, 76-78, 171.

Accordingly, because Plaintiffs have pleaded their claims with sufficient particularity to put UAA on notice of the bases for the claims against it, the Court should deny UAA's motion to dismiss.

## B. Plaintiffs have pleaded plausible claims for relief.

Plaintiffs have sufficiently pleaded plausible claims against UAA for (1) violation of the Arizona Consumer Fraud Act, (2) negligent misrepresentation, (3) fraudulent misrepresentation, (4) fraudulent inducement, (5) negligence, and (6) civil conspiracy. UAA's arguments to the contrary are based on failures to read the Complaint in its entirety.

1. *Plaintiffs properly allege a violation of the Arizona Consumer Fraud Act.*

There are only two elements necessary to establish violation of the Arizona Consumer Fraud Act: (1) the defendant made a misrepresentation in connection with the sale or advertisement of merchandise, and (2) that conduct proximately caused the plaintiff to suffer damages. *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1009 (9th Cir. 2023). In this case, the Complaint contains more than sufficient factual allegations to support Plaintiffs' claim for violation of the act. As discussed above, UAA made misrepresentations in connection with selling its program to Plaintiffs as to the duration of the program and the quality of the program. The Complaint then further details how UAA's conduct caused them harm, including through having taken on student loan debt and suffering damage to their careers. *See, e.g.*, Complaint, at ¶¶ 537-39.

UAA relies on *Lowry v. EMC Mortg. Corp.*, No. CV-11-08177-PCT-JAT, 2013 U.S. Dist. LEXIS 32308, at *6 (D. Ariz. Mar. 5, 2013) to argue there is insufficient detail to support the claims. That case involved pro se plaintiffs who submitted a complaint rife with "generalized grievances against the mortgage industry." Lowry is nothing like this case, where Plaintiffs have provided great detail into UAA's conduct giving rise to the claim.

UAA then argues the claim fails due to a failure to allege reliance. That is simply not true. Each of the Plaintiffs alleged they joined UAA based on UAA's misrepresentations about the program. It is unclear what more UAA could possibly expect to be alleged. In *Quinalty v. FocusIT LLC*, No. CV-23-00207-PHX-JJT, 2024 WL 342454, at *6 (D. Ariz. Jan. 30, 2024), the plaintiffs provided Personal Identifying Information ("PII") to banks and financial institutions who then stored that information with a third-party vendor. When the third-party vendor had a data breach, the plaintiffs sued the vendor and alleged a violation of the Arizona Consumer Fraud Act. The problem in that case, though, was the at the plaintiffs never had direct dealings with the vendor and there were no allegations that

that the vendor made misrepresentations to the plaintiffs. *Id.* at *2-4.That is nothing like this case, where Plaintiffs have expressly alleged direct dealings with UAA and receipt of the misrepresentations at issue and having relied on this misrepresentations by enrolling in UAA.

1. *Plaintiffs have alleged plausible common law claims*.

As an initial matter, UAA's complaints as to choice of law issues ignore the factual allegations of the complaint. Courts sitting in diversity apply the choice of law rules of the forum state. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). With respect to pecuniary harm based on deceit, Arizona courts have looked to Restatement (Second) Conflict of Laws, § 148. *Rhoads v. Harvey Publ'ns*, 604 P.2d 670, 673 (Ariz. App. 1979). In Rhoads, the Arizona Court of Appeals held Arizona law would apply where the plaintiff "acted in reliance on the defendants' representations in Arizona." In this case, every Plaintiff acted in reliance on Defendants' representations in Arizona by relocating to and beginning flight training at UAA. This conclusion tracks with the commentary to Section 148, which states: When a major part of the action in reliance takes place in one state and a lesser part in another, the first state has a more important contact with the occurrence than does the latter. When plaintiff's action in reliance is taken pursuant to the terms of an agreement made by the plaintiff with the defendant, or is otherwise of a sort contemplated by the defendant, the place of reliance is a more important contact than it is in other situations…

Restatement (Second) of Conflict of Laws, § 148, cmt. f.

***a. Plaintiffs plausibly alleged negligence and negligent misrepresentation claims.***

UAA's argument for dismissal of Plaintiffs' negligence and negligent misrepresentation claims hinges on cherry-picking a single word in the complaint and ignoring the many allegations describing the misrepresentations at issue and again ignoring

facts showing Plaintiffs not only relied on the misrepresentations, but they were justified in relying on the misrepresentations.

First, UAA ignores the allegations in the complaint and argues Plaintiffs' negligent misrepresentation claim concerns a promise of future conduct that is not actionable. This is not true. The misrepresentations at issue spoke directly to the quality and characteristics of the flight school program. The Complaint identifies specifically the misrepresentations UAA made to Plaintiffs concerning the length of the flight school program being 12 months and, for example, that it would feature "industry-leading resources, equipment and accommodations." *See, e.g.*, Complaint at ¶¶ 57-58. This is akin to the University of Arizona advertising that it offers four-year undergraduate programs; it is a statement as to the characteristic of a product, not a promise to act in the future. UAA cannot obtain dismissal by simply ignoring the facts in the complaint.

Second, as addressed above, each Plaintiff has properly alleged reliance, and all such reliance was justified. As UAA concedes, "In claims of negligent misrepresentation, a plaintiff can justifiably rely on a statement when the circumstances would not cause a reasonable person to question the statement's veracity." *Young v. Arizona Summit L. Sch. LLC*, No. CV-16-03490-PHX-DJH, 2018 WL 11470870, at *4 (D. Ariz. June 12, 2018). In this case, a reasonable person would certainly not find any reason to question UAA and United's representations as to characteristics of the flight school. This is not a case where a plaintiff had countervailing information or red flags that should have triggered an investigation. Plaintiffs have met their pleading burden.

Finally, Plaintiffs are not seeking a double recovery, but at the pleading stage a plaintiff is permitted to plead in the alternative. Especially in cases where a defendant is seeking dismissal of some claims, it would be premature to dismiss claims solely on the basis of being duplicative if they are based on disparate theories of liability. In this case,

Plaintiffs' negligence theory adequately alleges Defendants' failure to use reasonable care in their marketing and should survive.

### *b. Plaintiffs plausibly allege their fraud claims.*

Plaintiffs have alleged plausible fraudulent misrepresentation and fraudulent concealment claims. UAA repeats the same flawed arguments in seeking dismissal of these claims. First, Plaintiffs have plainly alleged the misrepresentations at issue related to the characteristics of the program. UAA advertised the program as an "accelerated," one-year flight school with "industry-leading" resources. That representation was divorced from reality. Plaintiffs allege, for example, a lack of planes, instructors, and access to FAA examiners. Moreover, UAA again ignores the allegations in the Complaint. For example, UAA ignores that its accrediting body saw a need to cap UAA's enrollment to a manageable number of students, but UAA continued to exceed that enrollment cap and not have the resources to accommodate all of the students. Complaint, ¶¶ 83-90.

### *c. Plaintiffs plausibly allege civil conspiracy.*

Finally, Plaintiffs have plausibly alleged a civil conspiracy claim. UAA makes two arguments against this claim: (1) no underlying tort and (2) no evidence of agreement. Both arguments fail. First, there is plainly an underlying tort in the form of the negligent/fraudulent misrepresentations as addressed above. Second, UAA again ignores the allegations in the Complaint that support the existence of an agreement between United and UAA. The complaint alleges United purchased and rebranded UAA as part of its pilot-recruitment strategy and that UAA operated as United's wholly owned flight-training academy, with both entities jointly promoting UAA as a primary pipeline for United's future pilots. Complaint, at ¶¶ 42-44, 49, 53. The complaint further alleges that UAA and United coordinated in marketing and admissions by jointly representing the program through UAA's website, United-affiliated websites, United emails, admissions letters, enrollment agreements, handbooks, and orientations, reflecting a shared plan to induce

students to enroll at UAA based on uniform representations. *Id.* at ¶¶ 54-56, 58-62. In addition, senior leadership from United and UAA jointly promoted the program, participated in public events and graduation ceremonies, and continued repeating the same representations regarding UAA's program even after resource shortages and delays became apparent, supporting the inference that the entities acted in concert rather than independently. *Id.* at ¶¶ 50-53, 78-80, 167, 253-254, 363.

Because Plaintiffs Complaint contains sufficient factual allegations demonstrating rights to relief from UAA, the Court should deny UAA's motion to dismiss.

**C. <u>Plaintiffs claims are not time-barred; application of statutes of limitation is a factual question not appropriate for resolution under Rule 12</u>.**

"When a party knows, or had reason to know, that a claim for fraud can be made is a classic fact question for a jury." *Waters v. Smartcomm License Servs.*, 2020 Ariz. Super. LEXIS 853, *3 (D. Ariz. March 10, 2020). The Court should deny UAA's request to determine application of a statute of limitations in a motion to dismiss. This is especially so because UAA's argument for when the claims purportedly accrued does not comport with Arizona law. Actions for fraud do not accrue "until the discovery by the aggrieved party of the facts constituting the fraud." *See* Ariz. Rev. Stat. § 12-543. In this case, UAA argues for an overly simplistic accrual analysis based solely on the date a Plaintiff eclipsed the one-year mark at UAA. That date, though, does not comport with discovery of the "facts constituting the fraud," especially in light of the factual allegations in the Complaint. The Complaint alleges that when students raised concerns about delays and lack of progress, UAA reassured them that internal process improvements were underway and reiterated commitments that students would soon advance through the program. Complaint, at ¶ 79. At the same time, UAA blamed students for delays by placing them on remedial plans or expelling them for alleged lack of progress, situational awareness, or performance deficiencies, while disregarding the lack of instructors, aircraft, and consistent

instruction. *Id.* at ¶¶ 118, 130, 147-149, 184, 195, 209, 241, 344, 435, 460. Ultimately, the facts show the Plaintiffs became aware of the fraud when it came to light that UAA was not in compliance with the accrediting body's enrollment caps specifically intended to ensure adequate resources for students.

At a minimum, there is a fact question at this stage of the proceedings that must be resolved in favor of Plaintiffs. The Court should deny UAA's motion.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request the Court deny UAA's motion to dismiss and grant Plaintiffs such further relief as the Court deems proper.

Respectfully submitted February 26, 2026.

**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**

*/s/ Patrick M. Sweet*
David K. TeSelle
Joshua Abromovitz
Patrick M. Sweet
Sophia E. Kyziridis
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 26, 2026, the foregoing Response was filed and served via the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ Brenda Westra